No. 97-149

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 136


BRUCE G. KNEELAND,

Plaintiff and Appellant,

v.

LUZENAC AMERICA, INC.,

Defendant and Respondent.



APPEAL FROM:   District Court of the Fifth Judicial District,
In and for the County of Madison,
The Honorable Frank M. Davis, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Michael J. San Souci; Law Office Michael J. San Souci;
Bozeman, Montana

For Respondent:

Thomas E. Hattersley, III, and Teri A. Walter; Gough,
Shanahan, Johnson & Waterman; Helena, Montana



Submitted on Briefs: March 5, 1998

Decided: June 2, 1998

Filed:


_____
Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1	The plaintiff, Bruce G. Kneeland, brought this action alleging that he was wrongfully discharged by defendant Luzenac America, Inc.  Kneeland appeals the decision of the Fifth Judicial District Court, Madison County, granting defendant's motion for summary judgment on his breach of implied covenant claim.  Kneeland also appeals the jury verdict finding that he was not wrongfully discharged by Luzenac.  We affirm.

¶2	We restate the issues as follows:

¶3	1.	Did the District Court err in granting summary judgment to Luzenac on Kneeland's claim of post-termination bad faith?

¶4	2.	Did the District Court properly instruct the jury?

¶5	3.	Was there substantial evidence to support the jury verdict?

¶6	4.	Did the District Court err in denying Kneeland's motions for judgment as a matter of law, and motion for a new trial?

FACTUAL AND PROCEDURAL BACKGROUND

¶7	In 1981, Bruce G. Kneeland was hired by Cyprus Industrial Minerals to work for the company's Yellowstone Mine Operation.  Later, Cyprus was renamed Luzenac America, Inc.  Luzenac is a talc company with principal mine facilities in Montana and headquarters in Denver, Colorado.  Luzenac's Montana Mines Division has three mine sites in Montana that operate separately.  The largest site is the Yellowstone Mine near Ennis.  The company also operates the Beaverhead Mine, a small underground mine in the Ruby Mountains, and the Antler Mine, a surface mine located  south of Silver Star.

¶8	In the early 1990s, the talc market was in a downturn. Talc, a commodity, is an industrial mineral.  Talc companies face competition from other industrial mineral producers, such as clay and calcium carbonate companies.  Also, in recent years, there has been a large influx of talc into the market from cheaper, foreign producers.  As a result, the United States talc market accumulated a large supply of inventory.

¶9	Faced with these conditions, Luzenac's Montana Mines Division reconfigured its workforce in late 1993 and mid-1994 to reduce its personnel by fifty-eight hourly positions.  At first,  Luzenac offered voluntary retirement and voluntary incentive packages to trim its workforce.  However, these incentives did not result in a total reduction of fifty-eight hourly positions.  Subsequently, the company reviewed its personnel needs and determined which job positions would be reduced in number and which positions would be eliminated completely or reconfigured.

¶10	The Montana Mines Division had a handbook applicable to all its hourly employees published by Cyprus, prior to the company's name change

in 1992. The handbook was amended from time to time. As of 1994, the handbook contained a policy dealing with downsizing. The handbook specifically outlined a process by which employees may "bid" for open positions, or "bump" into occupied positions in the event of a reduction in force. A bump from an employee would displace another employee currently occupying that position.

¶11 The employees of the Montana Mines Division were aware that it was over staffed and required downsizing. The employees approached Mike Toelle, the general manager, with their concerns. To achieve an equitable result acceptable to all personnel, Toelle formed a committee of hourly employees from all three mine sites. The purpose of the committee was to develop a consensus on how the downsizing should occur and revise the policy on reducing the workforce.

¶12 Under the policy the committee developed, Yellowstone Mine employees, like Kneeland, could bid for any open position available at their mine. These employees could also bump into any position at the Yellowstone Mine or into a designated "entry-level" position at the Beaverhead mine, if they had the necessary qualifications for the position and more seniority than the individual occupying the position.

¶13 Job descriptions were posted detailing the open positions available for bid, and the entry level positions vulnerable to bumping. Employees were requested to fill out bid and bump sheets identifying the position they were seeking. The person with the most seniority and necessary qualifications for the position would be chosen. A committee evaluated each application and an applicant was required to gain the consensus of the members of the committee before being selected for a position.

¶14 At first, Kneeland attempted to bid into the positions of plant maintenance and mobile maintenance at the Yellowstone Mine. However, those positions were filled by applicants with more seniority than Kneeland. He then attempted to bump into the position of underground mechanic at the Beaverhead Mine. That position was not vulnerable to bumping and his application was rejected. He also attempted to bump into the position of underground mine support at the Beaverhead Mine, but was unsuccessful because he lacked the published minimum qualifications for that position. Kneeland made no other attempt to bid upon or bump into any other position for which he was eligible. Therefore, after the application process was over, Kneeland was laid off in a reduction in force from Luzenac in mid-1994.

¶15 In July 1994, after the workforce reduction, Luzenac acquired Montana Talc Company, a competitor with a mine site adjacent to the Yellowstone Mine facility. Due to the acquisition, Luzenac hired five individuals whom they had recently terminated. Kneeland was not one of those hired back to work for Luzenac.

¶16 On September 27, 1994, Kneeland filed a complaint in the Fifth Judicial District Court, Madison County, alleging wrongful discharge and

related tort claims, including conspiracy. He also alleged a claim based on "post-termination bad faith," arising out of Luzenac's failure to reinstate, recall, or rehire him after acquiring the Montana Talc Company. On November 1, 1994, Luzenac filed its answer to the complaint, denying the allegations and setting forth numerous affirmative defenses.

¶17 On December 1, 1995, Luzenac filed motions, moving for summary judgment against all of Kneeland's claims. Kneeland filed a motion to recover sanctions, alleging that Luzenac violated Rule 11 by moving for summary judgment on all claims. A hearing was held and the parties stipulated that the claim based on civil conspiracy should be dismissed.

¶18 On February 6, 1996, the court granted summary judgment to Luzenac on Kneeland's claims of intentional infliction of emotional distress and post-termination bad faith. The court denied summary judgment on Kneeland's wrongful discharge claim, finding that "a factual issue exists as to whether there has been a violation of express provisions of a written personnel policy in reduction of force." The court also denied Kneeland's request for the imposition of attorney fees and sanctions against Luzenac.

¶19 On February 13, 1996, Kneeland filed a petition for reconsideration of the court's ruling on summary judgment relating to Kneeland's claim for post-termination bad faith. In the alternative, Kneeland requested that the court certify the claim as final pursuant to Rule 54(b), M.R.Civ.P., in order for this Court to review the issue. The District Court granted the motion to certify and postponed any further action on the case pending a ruling by this Court.

¶20 Kneeland filed a "notice of certification of proposition of state law" with this Court on February 26, 1996. We issued an order on February 29, 1996, stating that Kneeland's request would be handled as an appeal of a judgment pursuant to Rule 54(b), but that we would not rule on the propriety of the Rule 54(b) certification at that time. Luzenac then filed a motion to dismiss the appeal, arguing that the requirements for Rule 54(b) certification had not been met. We agreed, and on March 28, 1996, this Court dismissed Kneeland's appeal pursuant to Rule 54(b).

¶21 A jury trial began on October 15, 1996, on Kneeland's wrongful discharge claim. On October 21, 1996, the jury return a unanimous verdict for Luzenac. Judgment was entered on October 31, 1996. On November 1, 1996, Kneeland filed a motion for judgment as a matter of law, or alternatively, motion for a new trial. On November 29, 1996, the District Court denied Kneeland's motion.

¶22 On December 30, 1996, Kneeland filed a notice of appeal. Kneeland now appeals from the order of summary judgment dismissing his claim of post-termination bad faith, the final judgment and jury verdict, and from the order denying his post-trial motion.

ISSUE 1

¶23 Did the District Court err in granting summary judgment to Luzenac on

Kneeland's claim of post-termination bad faith?

¶24 Our standard of review in appeals from summary judgment rulings is de novo. See Motaire v. Northern Montana Joint Refuse Disposal Dist. (1995), 274 Mont. 239, 242, 907 P.2d 154, 156; Mead v. M.S.B., Inc. (1994), 264 Mont. 465, 470, 872 P.2d 782, 785. When we review a district court's grant of summary judgment, we apply the same evaluation as the district court based on Rule 56, M.R.Civ.P. See Bruner v. Yellowstone County (1995), 272 Mont. 261, 264, 900 P.2d 901, 903. In Bruner, we set forth our inquiry:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of material fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

Bruner, 272 Mont. at 264-65, 900 P.2d at 903 (citations omitted).

¶25 Kneeland argues that the District Court erred in granting summary judgment to Luzenac on his claim based on post-termination bad faith. The court had ruled that Kneeland's claim was precluded by the Montana Wrongful Discharge From Employment Act (WDFEA), § 39-2-913, MCA. Kneeland argues that Luzenac's failure to rehire him after it had acquired Montana Talc Company constitutes a separate and independent tort of post-termination bad-faith.

¶26 By its own terms, the WDFEA "sets forth certain rights and remedies with respect to wrongful discharge" and "provides the exclusive remedy for a wrongful discharge from employment." Section 39-2-902, MCA. The Act provides that "no claim for discharge may arise from tort or express or implied contract." Section 39-2-913, MCA. Furthermore, under the WDFEA, "[t]here is no right under any legal theory to damages for wrongful discharge under this part for pain and suffering, emotional distress, compensatory damages, punitive damages, or any other form of damages, except as provided for in [the Act]." Section 39-2-905(3), MCA.

¶27 In construing § 39-2-913, MCA, we have held that the section bars all claims arising from an asserted wrongful discharge based upon common law tort or implied or express contract. Beasley v. Semitool, Inc. (1993), 258 Mont. 258, 261, 853 P.2d 84, 86. However, not all tort or contract claims are barred by § 39-2-913, MCA, because they arise from employment. Rather, § 39-2-913, MCA, bars only those tort and contract claims which are "for discharge." Beasley, 258 Mont. at 262, 853 P.2d at 86.

¶28 First, we examine whether Kneeland's claim of post-termination bad faith constitutes a separate and independent tort unrelated to the alleged wrongful discharge. Kneeland claims that Luzenac is liable for bad faith because it failed to rehire him after it acquired Montana Talc Company and

hired five workers. Luzenac counters that it had no duty to rehire Kneeland after he had been permanently terminated in the reduction of force in 1994.

¶29  This Court has held that the breach of a covenant or a contract may result in the tort of bad faith only in exceptional circumstances. To be actionable the plaintiff must establish a special relationship. See Story v. City of Bozeman (1990), 242 Mont. 436, 791 P.2d 767. In this case, Kneeland has not established that a contract existed between him and Luzenac after his termination. Therefore, there is no need to establish whether or not a special relationship existed between Kneeland and Luzenac or if Luzenac acted tortiously in failing to rehire him.

¶30  In fact, once Kneeland was terminated in 1994, Luzenac had no duty to rehire Kneeland at any time in the future. Kneeland understood that once he was terminated, Luzenac had no further obligations to him. Kneeland so testified in his deposition:

Q: All right. Nobody [at Luzenac] promised you, "We're going to hire you back."

A: No. As a matter of fact, this wasn't a layoff. Mr. Pearson stood up in front of the whole room and said this was a termination.

Q: Okay.

A: So that if we do rehire, we have no obligation to rehire anybody. That's why we are offering this separation package.

Q: And that was clear to you?

A: Yes, at that particular point in time.

¶31  Kneeland was also unable to identify any basis for his claim that Luzenac had a duty to rehire:

Q: . . . I am asking you if you thought you had some kind of personnel policy right, some right that is established by an employee guideline or a statement you saw? What do you think established, in your view, this concept that you had a right to be rehired back to the company?

A: I guess I didn't feel that I had a right to be rehired back. I felt that in good faith they should have hired me back.

¶32  Kneeland admitted that there was no representation or policy by Luzenac that established a duty or obligation for the company to hire him back at any time in the future. He admitted that he understood at the time he was terminated that his separation from Luzenac was permanent. Furthermore, he cannot establish the existence of a contract or special relationship that would support a claim for post-termination bad fath.

¶33  We determine that Kneeland's tort claim is not actionable under the WDFEA and is also precluded by the Act because he cannot establish a basis for the claim aside from his discharge in 1994.  Therefore, we conclude that the District Court was correct in granting summary judgment to Luzenac and denying Kneeland's claim for post-termination bad faith.

ISSUE 2

¶34  Did the District Court properly instruct the jury?

¶35  We have previously stated that the district court has discretion when it decides how to instruct the jury, taking into consideration the parties' theories, and that we will not overturn the court's decision absent an abuse of discretion. Cechovic v. Hardin & Associates, Inc. (1995), 273 Mont. 104, 116, 902 P.2d 520, 527.  When we examine whether jury instructions were properly given or refused, we consider the instructions in their entirety, as well as in connection with the other instructions given and the evidence at trial. Cechovic, 273 Mont. at 116,  902 P.2d at 527.

¶36  First, Kneeland argues that the District Court erred when it refused Kneeland's proposed Instruction No. 4.  Instruction No. 4, given by the District Court, to which Kneeland objected, read as follows:

A discharge is wrongful if it is done without good cause or if the employer violated the express provisions of its own written personnel policy.
Under Montana law, "discharge" includes any termination of employment, including resignation, elimination of the job, layoff for lack of work, or any other cutback in the number of employees for legitimate business reasons.

¶37  Kneeland's proposed Instruction No. 4 provided:
"Discharge" includes a constructive discharge as defined in subsection (1) and any other termination of employment, including resignation, elimination of the job, layoff for lack of work, failure to recall or rehire, and any other cutback in the number of employees for a legitimate business reason.

Kneeland requested this instruction based on his contention that Luzenac's failure to rehire him is actionable under WDFEA.

¶38  Although not entirely clear, it appears that Kneeland attempted to bring his "failure to rehire claim" back within the auspices of the WDFEA during the jury trial.  Kneeland's proposed Instruction No. 4 included the"failure to recall or rehire" language contained in the definition of discharge provided in § 39-2-903 (2), MCA.  In the pretrial proceedings, however, Kneeland maintained that the defendant's post-termination conduct was outside the purview of the WDFEA.  As stated above, we have concluded that the District Court was correct in dismissing on summary judgment Kneeland's claim that Luzenac was liable for a separate and independent tort of post-termination bad faith.

¶39 We determine that Kneeland's claim that Luzenac is liable for wrongful discharge because it failed to rehire or recall him is also without merit. Therefore, we conclude that the District Court properly instructed the jury in the court's Instruction No. 4. This was not a situation where the "failure to recall or rehire" language should have been included in the definition of "discharge." Kneeland testified at length that he considered his termination from Luzenac to be permanent. He was not temporarily laid off or in a recall status. See Arnold v. Boise Cascade Corp. (1993), 259 Mont. 259, 856 P.2d 217. Kneeland was permanently separated and received a severance. Thus, we hold that the District Court properly exercised its discretion in giving the court's Instruction No. 4.

¶40 Next, Kneeland argues that the District Court erred by instructing the jury on the defense of failure to complete an internal appeal procedure. Kneeland claims that the court erred in allowing Luzenac to present as a defense Kneeland's failure to complete the company's internal appeal process. Kneeland argues that since Luzenac did not assert his failure to complete the internal grievance process as an affirmative defense in this action, the jury should not have considered it.

¶41 On October 17, 1996, the parties discussed the settlement of instructions before the case was turned over to the jury. Instruction No. 8 given by the District Court reads as follows:

> If an employer maintains written internal procedures under which the employee may appeal a discharge within the organizational structure of the employer, the employee shall first exhaust those procedures prior to filing a wrongful discharge action. The employee's failure to initiate or exhaust available internal procedures is a defense to a wrongful discharge claim.

This instruction was based on § 39-2-911(2), MCA, which states that an "employee's failure to initiate or exhaust available internal procedures is a defense to an action brought under this part."

¶42 Luzenac counters that Kneeland made no objection when the court and the parties settled the instructions. Moreover, Luzenac argues that this affirmative defense was included within the pretrial order jointly prepared by both parties before the trial.

¶43 This Court has previously held that, generally, a failure to object to a jury instruction at the trial level amounts to a waiver of the right to raise the objection on appeal. State v. Holzapfel (1988), 230 Mont. 105, 113, 748 P.2d 953, 957. The instruction which is given without objection becomes the law of the case. Wisher v. Higgs (1993), 257 Mont. 132, 143, 849 P.2d 152, 158. The transcript shows that both parties and the court thoroughly discussed Luzenac's proposed jury instruction that became Instruction No. 8. After reviewing the transcript, we note that Kneeland did not object to Instruction No. 8. Thus, because Kneeland did not object, we determine that Instruction No. 8 was properly before the jury. Furthermore, Kneeland was put on notice by Luzenac to this affirmative defense in the pretrial order.

ISSUE 3

¶44   Was there substantial evidence to support the jury verdict?

¶45   In Lee v. Kane (1995), 270 Mont. 505, 893 P.2d 854, this Court
discussed our standard of review of a jury verdict in a civil case:

> Our scope of review of jury verdicts is necessarily very
> limited.  This Court will not reverse a jury verdict which is
> supported by substantial credible evidence.  This Court has
> defined substantial credible evidence as evidence which a
> reasonable mind might accept as adequate to support a
> conclusion.  The evidence may be inherently weak and
> conflicting, yet it may still be considered substantial.  It is well
> established that if the evidence is conflicting, it is within the
> province of the jury to determine the weight and credibility to
> be afforded the evidence.  Finally, upon reviewing a jury verdict
> to determine if substantial credible evidence exists to support
> the verdict, this Court must view the evidence in the light most
> favorable to the prevailing party.

Kane, 270 Mont. at 510-11, 893 P.2d at 857 (quoting Hansen v. Hansen
(1992), 254 Mont. 152, 157, 835 P.2d 748, 750-51).

¶46   Kneeland argues that the jury verdict is not supported by substantial
evidence.  However, outside of discounting the credibility of the witnesses that
testified, his brief contains nothing to support his contention that "the evidence
at trial raised the direct and inescapable conclusion that [Luzenac] was guilty
of a pattern of selective and disparate treatment of Kneeland over a course of
years."

¶47   As Luzenac points out, it presented testimony regarding the treatment
of the mine's employees during the downsizing.  Luzenac offered testimony
through Toelle stating the reasons for the mine's downsizing and how the
process was carried out.  He testified that all decisions were based on the
consensus of a committee comprised of different department heads, managers,
and supervisors.  Toelle testified that Luzenac tried to avoid as many layoffs
as possible by offering early retirement and voluntary resignation packages to
any employee who wanted to leave.  Toelle also explained that Kneeland was
not qualified for the positions he sought or had less seniority than the people
ultimately chosen for those positions.

¶48   Furthermore, upon questioning by Luzenac, Kneeland admitted that
although he believed that the review committee had an ulterior motive against
him, his accusations were not based on any evidence, but were merely
speculation.  Kneeland also admitted that he tried to bid for or bump into
positions which were awarded to employees who had more seniority than he
did or who were more qualified than he was, and that he bid for a position that
was not available for bidding or bumping.

¶49   As for Kneeland's claim that he should have been hired for one of the

positions that became available after Luzenac acquired Montana Talc Company, he admitted that his termination was permanent and that he had no recall rights. Also, as we have stated above, there is no factual or legal basis to Kneeland's claim that Luzenac had a duty to rehire him following the reduction of force.

¶50 In denying Kneeland's motion for judgment as a matter of law or, in the alternative, for a new trial, the District Court stated:

> The suggestion that the evidence of wrongful discharge was 'overwhelming' is not sustained by the record. The evidence was 'overwhelming' sustaining Defendant's positions, not Plaintiff's. The unanimous verdict confirms the assessment.

This Court agrees.

¶51 It is within the province of the jury to determine the weight to be given to evidence presented and to judge the credibility of witnesses, and in reviewing the jury's verdict we must view the evidence in the light most favorable to the prevailing party. See Hogan v. Flathead Health Center, Inc. (1992), 255 Mont. 388, 842 P.2d 335; Silvis Through Silvis v. Hobbs (1992), 251 Mont. 407, 824 P.2d 1013. We conclude that when the evidence in this case is viewed in the light most favorable to Luzenac, the jury's verdict is supported by substantial credible evidence.

ISSUE 4

¶52 Did the District Court err in denying Kneeland's motions for judgment as a matter of law, and motion for a new trial?

¶53 The standard of review in appeals from the denial of a motion for judgment as a matter of law, made pursuant to Rule 50(b), M.R.Civ.P., is the same as that formerly used for review of a motion for a directed verdict, and may be granted only where it appears as a matter of law that a party could not prevail upon any view of the evidence including the legitimate inferences to be drawn therefrom. Wilkerson v. School District (1985), 216 Mont. 203, 211, 700 P.2d 617, 622. Motions for judgment as a matter of law are proper only when there is a complete absence of any evidence to warrant submission to a jury. Durden v. Hydro Flame Corp., 1998 MT 47, ¶21, 55 St. Rep. 198, 21 (citing Jacques v. Montana Nat'l Guard (1982), 199 Mont. 493, 504, 649 P.2d 1319, 1325). Courts must exercise the greatest self-restraint in interfering with the constitutionally mandated processes of jury decision. Unless there is a complete absence of any credible evidence in support of the verdict, a judgment as a matter of law motion is not properly granted. Ryan v. City of Bozeman (1996), 279 Mont. 507, 510, 928 P.2d 228, 230.

¶54 Our review of a district court's denial of a motion for new trial is whether the court abused its discretion. Hando v. PPG Industries, Inc. (1995), 272 Mont. 146, 149, 900 P.2d 281, 283. Our review of an appeal based upon insufficiency of the evidence to support the jury's verdict is whether there is substantial evidence in the record to support the verdict. Cartwright v. Equitable Life Assur. of U.S. (1996), 276 Mont. 1, 23, 914 P.2d

976, 990.

¶55  On October 17, 1996, at the close of Luzenac's case in chief, Kneeland made an oral  motion for judgment as a matter of law, indicating that the evidence was overwhelming that Kneeland was, in some respects, the most qualified and senior employee and should not have been passed over for jobs at the mine.  The court denied the motion.

¶56  On November 1, 1996, after the jury returned a unanimous verdict in favor of Luzenac, Kneeland filed a motion for judgment as a matter of law, or alternatively, for a new trial.  In his motion, Kneeland argued that the general verdict form was improper,  Instruction No. 8 regarding the internal grievance procedure was misleading and prejudicial, and that the evidence was overwhelmingly in his favor.

¶57  In an order filed on November 29, 1996, the court denied Kneeland's motion.  The court stated:

>     The suggestion that the evidence of wrongful discharge was 'overwhelming' is not sustained by the record.  The evidence was 'overwhelming' sustaining Defendant's position, not Plaintiff's.  The unanimous verdict confirms the assessment.
>
>     . . . .
>
>     The Plaintiff now objects to the general verdict form which according to the record was agreed to by both parties.
>
>     In summary, in the Court's view, Plaintiff's post trial motions are totally without merit . . . .

¶58  We agree with the assessment of the District Court.  As stated above, we have concluded that Instruction No. 8 was proper for the jury to consider in resolving this action.  Moreover, Kneeland did not object to the instruction or the general verdict form before it was submitted to the jury.  Furthermore, as also stated above, the jury's verdict is supported by substantial credible evidence.  The evidence was not overwhelming for Kneeland's position, rather the evidence was overwhelming in support of Luzenac's position.

¶59  In conclusion, we hold that the District Court did not err in denying Kneeland's oral motion for judgment as a matter of law, nor did the court abuse its discretion in denying Kneeland's motion for judgment as a matter of law or, alternatively, for new trial.

¶60   Affirmed.

                                        /S/  JIM REGNIER

We Concur:
/S/  J. A.  TURNAGE
/S/  KARLA M. GRAY
/S/  TERRY N. TRIEWEILER

/S/  W. WILLIAM LEAPHART