No. 98-371

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 69

OLD REPUBLIC NATIONAL TITLE

INSURANCE COMPANY, a stock company,

Plaintiff and Respondent,

v.

REALTY TITLE COMPANY,

a Montana corporation,

Defendant and Appellant.

APPEAL FROM: District Court of the Tenth Judicial District,

In and for the County of Fergus,

The Honorable John R. Christensen, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert L. Johnson, Attorney at Law, Lewistown, Montana

No

For Respondent:

John P. Paul and Karl K. Rudback; Alexander, Baucus, Taleff &

Paul, Great Falls, Montana


Submitted on Briefs: March 19, 1999

Decided: April 6, 1999

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

**¶1. Realty Title Company (Realty Title) appeals from the order of the Tenth Judicial District Court, Fergus County, granting summary judgment to Old Republic National Title Insurance Company (Old Republic) and denying Realty Title's cross-motion for summary judgment. We affirm.**

**¶2. We restate the two issues on appeal:**

**¶3. (1.) Did the District Court err in awarding summary judgment to Old Republic on the ground that Realty Title breached the agency contract?**

**¶4. (2.) Did the District Court err in denying Realty Title's argument in support of its cross-motion for summary judgment that Old Republic's failure to assert policy exclusions was the actual cause of the loss to Old Republic?**

**Factual and Procedural History**

**¶5. The undisputed facts are as follows: In 1977, First Montana Title Insurance Company (First Montana), a title insurance underwriter, entered into an agency contract with Realty Title. Pursuant to this agreement, Realty Title was obligated to**

examine records and pass upon title to real property in Fergus, Petroleum, and Judith Basin counties in Montana. First Montana would then issue title insurance policies through Realty Title. In 1986, First Montana entered into an agreement with the Title Insurance Company of Minnesota (Minnesota Title), whereby First Montana assigned to Minnesota Title all of First Montana's rights in agency contracts identified in the agreement, including the 1977 agency contract between First Montana and Realty Title. Subsequently, Minnesota Title changed its name to Old Republic.

¶6. In 1975, Julia Jackson Snyder (Jackson Snyder) executed and delivered to escrow a contract for deed and warranty deed conveying to Henry and Arlene Turk (the Turks) 37-plus acres of real property located in Fergus County. The legal description in the contract for deed described "[a]ll that portion" of Jackson Snyder's holdings in the SW 1/4 of the NW 1/4 of Section 9, Township 15 North, Range 19 East, M.P. M., Fergus County, Montana, lying northwesterly of what was then known as the Gilt Edge Road. Realty Title retained in its possession an unexecuted copy of the contract for deed. However, no notice of purchaser's intent was ever recorded. Moreover, the Jackson Snyder to Turk deed was not recorded until 1985.

¶7. Realty Title then issued a commitment for title insurance with the Turks as the proposed insureds. This title insurance commitment was contingent upon Jackson Snyder providing a certificate of survey with a "complete and accurate Metes and Bounds description" of the property as required by the contract for deed. A survey of the property was completed and filed of record in Fergus County in 1975 as Certificate of Survey No. 80 (Survey #80). Survey #80 showed that the Jackson Snyder to Turk conveyance in fact included lands in <u>both</u> the SW 1/4 of the NW 1/4 and the NW 1/4 of the SW 1/4 of Section 9, including 7.78 acres lying northwesterly of the Gilt Edge Road in the NW? of the SW? of Section 9. The property description in the warranty deed was thereafter amended to conform with Survey #80, and that legal description reflected the fact that Survey #80 had been recorded in Fergus County in 1975.

¶8. In 1976, Realty Title thus issued a title insurance policy to the Turks. This policy set forth the legal description of the property as described in Survey #80. The abstractor's note sheet relating to the Turks' commitment for title insurance specifically referenced Survey #80, and was modified to reflect the fact that the Turks' policy also covered lands in the NW 1/4 of the SW 1/4 of Section 9.

¶9. Paragraph 4(c) of the 1977 agency agreement between First Montana and Realty Title --to which Old Republic succeeded in place of First Montana--states in relevant part: "Policies of title insurance subject to this agreement shall be issued by the Agent [Realty Title] . . . only after an examination of the title has been made by the Agent from its records and abstract plant and the public records . . . ." In turn, Paragraph 9 of the agency contract contains the following language:

> The Agent [Realty Title] hereby agrees to reimburse the Underwriter [Old Republic] for any loss the Underwriter may sustain under any policy of title insurance issued in pursuance of this agreement by reason of any gross negligence whatsoever on the part of the Agent or arising from any cause which the Agent, by using due diligence might have obviated . . . ; it being understood that the Agent shall not be liable for loss arising from defects in titles not disclosed of record . . . and of which the said Agent had no knowledge at the date of issuance of such title insurance.

¶10. In 1979, Realty Title issued a commitment of title insurance to Donald L. Weibert (Weibert), proposing to insure certain real property then owned by Jackson Snyder. This commitment described a portion of Section 9 as follows: "[A]ll that part of the SW 1/4 NW 1/4 and the NW 1/4 SW 1/4 lying Southeasterly of what is known as the . . . Gilt Edge road[.]" Later that year, Jackson Snyder executed and delivered to Weibert a warranty deed.

¶11. This deed included not only a description of lands lying southeasterly of the Gilt Edge Road, but also described 7.78 acres lying northwesterly of the road in the NW 1/4 of the SW 1/4 of Section 9. However, the 7.78 acres lying northwesterly of the Gilt Edge Road had been previously sold by Jackson Snyder to the Turks, as more accurately described in Survey #80. Weibert's deed was recorded in 1979 in Fergus County. Realty Title then issued a title insurance policy to Weibert insuring title in the real property conveyed by Jackson Snyder, including the 7.78 acres that had already been insured in the Turks' name.

¶12. On the date that Realty Title issued the policy to Weibert, its records contained references to the title insurance policy previously issued to the Turks as well as Survey #80. The Turks' title insurance policy referred to the unrecorded contract for deed and warranty deed conveying real property--including the 7.78 acres lying northwesterly of the Gilt Edge Road--from Jackson Snyder to the Turks, and indicated that these documents were escrowed at the First National Bank of Lewistown. Moreover, Realty Title had a copy of the unrecorded Turk contract for

deed in its records at the time that it issued Weibert's policy, which contract indicated that a survey had been completed pursuant to the transaction.

¶13. In 1981, at Weibert's behest, Realty Title issued a commitment for title insurance with the proposed insured and the precise amount of insurance to be determined at a later date. This commitment described real property in Sections 8 and 9, Township 15 North, Range 19 East, M.P.M., Fergus County, including all of the N 1/2 of the SW 1/4 of Section 9. Later that year, Weibert commissioned Certificate of Survey No. 216 (Survey #216), which was filed of record in Fergus County. Survey #216 described a tract of land 7.78 acres in size lying northwesterly of the Gilt Edge Road in the NW 1/4 of the SW 1/4 of Section 9, a description constituting a portion of the property already described in Survey #80.

¶14. Pursuant to Survey #216, Weibert executed a warranty deed conveying the 7.78 acres lying northwesterly of the Gilt Edge Road to Quality Seed Company, Inc. (Quality Seed), a corporation wholly owned by Weibert. This warranty deed was recorded in Fergus County in 1981. Realty Title then issued a title insurance policy to Weibert, insuring Quality Seed as to the title in the 7.78 acres lying northwesterly of the Gilt Edge Road.

¶15. In 1995, Weibert contacted a Lewistown real estate firm about the possibility of subdividing or selling the 7.78-acre parcel which he had previously conveyed to Quality Seed. Although no claim had been brought against Weibert, he believed that the title to the property was clouded, and thus demanded that Old Republic bring a quiet title action for the 7.78-acre tract. Upon investigating Weibert's demand, Old Republic discovered that the property had been previously conveyed to and insured by the Turks and that it therefore faced conflicting obligations to three different insureds: (1) the Turks (the 1976 policy); (2) Weibert (the 1979 policy); and (3) Quality Seed (the 1981 policy).

¶16. In 1997, Old Republic executed a settlement agreement with Weibert. Pursuant to this agreement, Old Republic paid $15,000 in return for Weibert and Quality Seed executing a quit claim deed for the 7.78-acre tract and releasing Old Republic from any further liability. Realty Title, although apprised of the negotiations, refused to contribute toward any settlement. Old Republic thus brought suit against Realty Title to recover the costs and attorney's fees incurred as a result of the demands of an insured brought under a policy issued by Realty Title.

¶17. At trial, both parties made cross-motions for summary judgment. Old Republic argued that Realty Title was liable for Old Republic's "loss" under the agency contract as a result of its failure to exercise "due diligence" in searching title records. Realty Title contended, in part, that the "real cause" of the $15,000 "loss" was Old Republic's failure to assert policy exclusions to defeat Weibert's demand for a quiet title action. The District Court granted summary judgment to Old Republic, finding Realty Title liable under the agency agreement for the $15,000 that Old Republic had paid to Weibert. Realty Title's cross-motion for summary judgment was denied by the District Court. Realty Title appeals.

### Discussion

¶18. (1.) Did the District Court err in awarding summary judgment to Old Republic on the ground that Realty Title breached the agency contract?

¶19. We review appeals from summary judgment rulings *de novo*. Kneeland v. Luzenac America, Inc., 1998 MT 136, ?24, 961 P.2d 725, ?24, 55 St.Rep. 541, ?24. In so reviewing, we apply the same analysis as a district court pursuant to Rule 56, M.R. Civ.P.:

> The movant must demonstrate that no genuine issues of material fact exist. Once this has been accomplished, the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist. Having determined that genuine issues of fact do not exist, the court must then determine whether the moving party is entitled to judgment as a matter of law. We review the legal determinations made by a district court as to whether the court erred.

Bruner v. Yellowstone County (1995), 272 Mont. 261, 264-65, 900 P.2d 901, 903 (citations omitted).

¶20. Realty Title asserts that the District Court erred in granting summary judgment to Old Republic on the basis that Realty Title breached its duty, pursuant to the agency agreement, to use "due diligence" in the examination of title records. Realty Title's position, consistent with its cross-motion for summary judgment, is that Old Republic had a "parallel duty" under the agency agreement to deal fairly and in good faith with Realty Title, and that Old Republic breached this implied duty by choosing to settle with Weibert without first conducting a "reasonable investigation" of the grounds of his demand for a quiet title action. Realty Title maintains, in the alternative, that Weibert was either a bona fide purchaser for value and that, by

recording his deed to the disputed 7.78-acre tract prior to the Turks, he succeeded to good title in the tract; or that Weibert was not a bona fide purchaser for value with respect to the 7.78-acre disputed tract because he allegedly knew that the Turks were in actual possession and that Jackson Snyder did not intend to convey that parcel. Thus, according to Realty Title, Old Republic was either under no obligation to quiet title in Weibert because he already had good title, or Old Republic was under an implied obligation to Realty Title to defeat Weibert's quiet title claim by asserting a standard policy exclusion from coverage for rights or claims of parties in possession or claiming to be in possession that are not shown by the public records.

¶21. With respect to the former claim, Realty Title cites § 70-21-304, MCA, which states:

> **Conveyance void as against other conveyance recorded first.** Every conveyance of real property, other than a lease for a term not exceeding 1 year, is void against any subsequent purchaser or encumbrancer, including an assignee of a mortgage, lease, or other conditional estate, of the same property or any part thereof in good faith and for a valuable consideration whose conveyance is first duly recorded.

Section 70-21-304, MCA. Realty Title argues that Old Republic should not have settled with Weibert and Quality Seed because Weibert's title to the 7.78-acre tract was not clouded; Weibert, by recording his deed before the Turks recorded their deed, attained good title to the disputed tract. Although Realty Title raised this argument in principle before the District Court in one paragraph of a reply brief, it failed to cite any legal authority whatsoever. While there is some appeal to this contention, the District Court, having not been made aware of § 70-21-304, MCA, never ruled on the question of the statute's applicability to this dispute. This Court has a long-standing policy against addressing any issue on appeal that was not properly raised below. Heisler v. Hines Motor Co. (1997), 282 Mont. 270, 278, 937 P.2d 45, 49. We would be remiss to reverse the District Court for misapplying a statute which Realty Title failed to cite to the court when summary judgment was requested. Thus, we decline to address this argument on the merits. We conclude that, by failing to raise ? 70-21-304, MCA, before the District Court, Realty Title has waived any claim that it might have pursuant to that statute.

¶22. In the alternative, Realty Title avers that even if it failed to use due diligence in searching title records, the District Court erred by granting summary judgment because Old Republic failed to introduce any expert testimony establishing the standard of care in the title insurance industry, as required by Doble v. Lincoln

County Title Co. (1985), 215 Mont. 1, 692 P.2d 1267. Old Republic responds by emphasizing that this case is "based on contract and not on tort." We agree. *Doble* involved a negligence action brought by former property owners against a title insurer. In *Doble*, this Court held that, in order to establish a *prima facie* case of negligence in the violation of a standard of care required of a title insurance company, a plaintiff must introduce expert testimony establishing the relevant standard of care required of that profession. *Doble*, 215 Mont. at 5, 692 P.2d at 1270. The rule of *Doble* is inapplicable to the case at bar. Old Republic requested summary judgment on the ground that Realty Title had breached the terms of the agency contract between the parties. Therefore, a standard of care in the tort sense is immaterial to this case because the agency agreement defined the standard to which Realty Title was required to conform its conduct.

¶23. Realty Title's contractual obligation to reimburse Old Republic arises from two provisions of the agency contract. First, pursuant to Paragraph 4(c) of the agreement, Realty Title was under a duty to issue title insurance policies "only after an examination of the title has been made by [Realty Title] from its records and abstract plant and the public records" (emphasis added). Second, under Paragraph 9 of the agreement, Realty Title agreed "to reimburse [Old Republic] for any loss [that Old Republic] may sustain under any policy of title insurance issued in pursuance of this agreement . . . arising from any cause which [Realty Title], by using due diligence might have obviated" (emphasis added).

¶24. Thus, we agree with Old Republic that, pursuant to Paragraph 9, Realty Title is contractually obligated to reimburse Old Republic for the $15,000 "loss" it sustained in having to settle with Weibert and Quality Seed, a loss occasioned by Realty Title's breach of Paragraph 4(c) in failing to use "due diligence" in the examination of its own records and the Fergus County public records before issuing conflicting title insurance policies to both Weibert and Quality Seed. We hold that, had Realty Title exercised due diligence, it would not have issued conflicting title insurance policies to the same disputed 7.78-acre tract of land and, therefore, Old Republic would not have suffered a loss.

¶25. The District Court properly relied upon Lipinski v. Title Ins. Co. (1982), 202 Mont. 1, 655 P.2d 970, to support its holding that Realty Title had failed to exercise due diligence. In *Lipinski*, this Court announced the following rule: "A title insurer cannot simply ignore a recital that puts it on notice of a possible defect in the title."

*Lipinski*, 202 Mont. at 10, 655 P.2d at 974. The plaintiff in *Lipinski* sued his title insurer in contract, pursuant to the title insurance policy, for failing to discover and disclose easements accompanying irrigation ditches which traversed his property. A warranty deed in the plaintiff's chain of title contained a recitation that the grant was " 'subject to rights established by irrigation ditch.' " *Lipinski*, 202 Mont. at 8, 655 P.2d at 974. The title insurance policy, in turn, contained an exclusion for " 'easements . . . not shown by the public records.' " *Lipinski*, 202 Mont. at 9, 655 P.2d at 974. The title insurance companies argued on appeal that, since the easements were not of public record, they could not be held liable for failing to disclose their existence to the plaintiff. *Lipinski*, 202 Mont. at 9, 655 P.2d at 974.

¶26. Thus, the question in *Lipinski* was whether the deed recital put the title companies sufficiently on notice that a duty was imposed to further determine the nature of the right recited in the deed. This Court held that the prior rights of the irrigation ditch were "sufficiently mentioned" in the warranty deed in the plaintiff's chain of title to put the title insurance companies on notice that there might also be easements accompanying those ditch rights and, accordingly, that this contingency should have been brought to the plaintiff's attention and "either specifically insured or specifically excluded from insurance coverage." *Lipinski*, 202 Mont. at 9, 655 P.2d at 974. Thus, we affirmed the trial court's holding that the title insurance companies were contractually liable for the plaintiff's loss, up to the face value of the title insurance policy, for their failure to discover and disclose, or specifically insure against, the existence of the easements.

¶27. The *Lipinski* rule is not directly on point here in the sense that any reference to Survey #80 was not technically within either Weibert's or Quality Seed's record chain of title. However, we determine that the principle of *Lipinski* is applicable to this dispute when viewed in light of the agency contract, which required Realty Title to search the public records as well as its own internal records prior to issuing a title insurance policy. Realty Title violated the *Lipinski* rule in this case by issuing title insurance policies to Weibert and Quality Seed without first discovering the Turks' prior interest--as revealed by Realty Title's own records and abstract plant--and either expressly insuring Weibert and Quality Seed as to that prior interest or specifically excepting the Turks' interest from coverage under the Weibert and Quality Seed policies.

¶28. We conclude, as did the District Court, that Realty Title is to be charged with

actual knowledge of Survey #80 at the time it issued the conflicting policies. Thus, the exception in the agency contract for title defects "not disclosed of record" and of which the agent had "no knowledge at the date of issuance" is inapplicable to shield Realty Title from liability. The Turks' commitment of title insurance specifically required that a certificate of survey be completed prior to issuance of the title insurance policy. Survey #80 was completed by Jackson Snyder and filed of record in Fergus County, at which time Realty Title issued a title insurance policy insuring the Turks as to the property description set forth in Survey #80. This description included, in part, 7.78 acres located in the NW 1/4 of the SW 1/4 of Section 9 lying northwesterly of the Gilt Edge Road. Realty Title's abstract notes specifically referenced Survey #80 and were amended to indicate that lands in the NW 1/4 of the SW 1/4 of Section 9 were covered by the Turks' policy. Based on the information in Realty Title's own records and abstract plant, a reasonably diligent inquiry would have disclosed that Survey #80 had been completed and filed of record in Fergus County for the purpose of defining the tract of land covered by the Turks' policy.

¶29. Given these circumstances, we agree with the District Court that, when Realty Title later insured Weibert as to the entire N 1/2 of the SW 1/4 of Section 9, it violated the *Lipinski* rule. Realty Title's own records and abstract plant put Realty Title sufficiently on notice of a possible defect in Weibert's title. Realty Title was therefore obligated to inquire further prior to issuing a title insurance policy insuring the same tract of land already insured in the Turks' name. When it failed to do so-- not once, but twice--Realty Title thereby breached its obligation under Paragraph 4 (c) of the agency contract to issue title insurance policies only after examining "its records and abstract plant and the public records" of Fergus County. This failure to exercise "due diligence" in title examination caused a "loss" to Old Republic, for which, pursuant to Paragraph 9 of the agreement, Realty Title is liable.

¶30. With respect to Realty Title's arguments concerning Old Republic's alleged "parallel duty" under the agency agreement to assert policy exclusions against Weibert, we are in agreement with the District Court: "Such arguments beg the question that is before the Court. Had Realty Title used due diligence in its examination of its own records, conflicting policies would not have been issued." That is, Realty Title's failure to exercise due diligence in searching title records was the genesis or cause of the Weibert-Quality Seed dispute in the first instance. For this reason, we need not address Realty Title's contentions under the second issue on appeal that the real cause of the loss was Old Republic's decision to settle without

first adequately investigating whether Weibert was, in fact, a bona fide purchaser with respect to the 7.78-acre parcel first insured by the Turks.

¶31. Affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER

/S/ WILLIAM E. HUNT, SR.