No. 86-546

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

GEORGE SAMUELSON and HELEN
SAMUELSON,

        Plaintiffs and Respondents,

   -vs-

A. A. QUALITY CONSTRUCTION, INC.,
and ALBERT ALDINGER,

        Defendants and Appellants.

---

APPEAL FROM: District Court of the Seventh Judicial District,
              In and for the County of Dawson,
              The Honorable H. R. Obert, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Nye & Meyer; Jerrold L. Nye, Billings, Montana

    For Respondent:

        Cox & Simonton; Lorraine A. Schneider, Glendive,
        Montana

---

Submitted on Briefs: Sept. 10, 1987

Decided: January 21, 1988

Filed: JAN 2 1 1988

*Ethel M. Harrison*

Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Defendant and appellant, A.A. Quality Construction (A.A. Quality), appeals a jury verdict in favor of the plaintiffs, George and Helen Samuelson. Trial was held in the Seventh Judicial District, Dawson County. The jury found A.A. Quality liable to the Samuelsons in the amount of $11,158.90 for damages sustained relating to the construction of the Samuelsons' home by A.A. Quality. We reverse and remand.

We address the following three issues on appeal:

1. Is the implied warranty of habitability applicable under the facts of this case?

2. Did the District Court err by refusing to admit the construction contract into evidence?

3. Did the District Court err by refusing defendant's proposed Instruction No. 19 which pertained to assumption of risk?

In March 1981, A.A. Quality agreed to sell two lots and construct a home in Glendive, Montana, for the Samuelsons. The total contract price was $155,804. Prior to entering the contract, George Samuelson asked Albert Aldinger, president of A.A. Quality, whether the foundation of the home should be equipped with any special drainage devices to help ensure proper drainage of water away from the foundation. According to George Samuelson's testimony, Mr. Aldinger advised them that precautionary drain devices were not necessary. In contrast, A.A. Quality asserts that Mr. Aldinger merely explained that he had built 7 or 8 other homes in the same general area and those homes had not required any special drainage devices. Mr. Aldinger also testified that the decision not to include such devices was left to the Samuelsons. A.A. Quality did not install drainage devices in the home.

During construction, the Samuelsons noted that the basement area accumulated water several times. Mr. Aldinger initially explained that the water entered the structure through window cutouts that were not yet covered with glass. Later the parties realized that the basement had a water seepage problem. A.A. Quality attempted to correct the problem by installing an exterior cement slab to divert water and by repairing rock pockets in the foundation.

The Samuelsons began to occupy the house in December 1981 and did not experience water seepage during the winter months. In the spring of 1982, water seepage began to reoccur and continued intermittently during wet periods.

The affected basement areas included a guest bedroom, storage area, recreation room and a crawl space. The record indicates that the seepage caused problems in many respects: furniture was removed from the guest bedroom, portions of sheetrock were removed from two walls in an attempt to locate the problem, the carpeting was rolled back for weeks at a time to allow it to dry and was entirely removed on one occasion, floor heaters were used to dry the wet areas, a pump was used to clear the crawl space of excess water, use of the recreation room was restricted, items in the storage room had to be raised above the floor, and a vacuuming service was required on several occasions to vacuum water from the basement.

As the water continued to reoccur and the efforts of A.A. Quality to halt the problem proved unsuccessful, the working relation between A.A. Quality and the Samuelsons became increasingly strained. Eventually, A.A. Quality refused to make further attempts to remedy the problem. In the fall of 1983, the Samuelsons hired another contractor. The contractor excavated the cement slab and backfill from around the house and installed a drain pipe along the

foundation to carry water away from the house. These efforts apparently stopped the water seepage.

The Samuelsons brought an action against A.A. Quality and Albert Aldinger. Aldinger was dismissed as a party defendant prior to trial. The Samuelsons proceeded to trial against A.A. Quality on theories of negligence and breach of the warranties of habitability and workmanlike construction. The jury found in favor of the Samuelsons, and A.A. Quality appeals.

I

Is the implied warranty of habitability applicable under the facts of this case?

We considered this implied warranty of habitability initially in Chandler v. Madsen (1982), 197 Mont. 234, 642 P.2d 1028. In Chandler, the footings and foundation of the home began to settle due to a condition of the soil upon which the house was built. Doors and locks failed to operate, walls cracked, floors bulged, windows broke, plumbing bent, fixtures and walls separated, and the foundation lowered as much as 3.6 inches in spots. The home truly was uninhabitable. Chandler, 642 P.2d at 1030. At that time, we held that the builder-vendor of a new home impliedly warrants that the residence is constructed in a workmanlike manner and is suitable for habitation. Chandler, 642 P.2d at 1031. We again considered the warranty in Degnan v. Executive Homes, Inc. (Mont. 1985), 696 P.2d 431, 42 St.Rep. 262. In Degnan the home was built upon unstable ground. The hillside began slipping downward causing severe structural damage to the home rendering the home truly uninhabitable. 696 P.2d at 433. In that case we stated that "[t]he implied warranty places on the builder-vendor liability for defects in a

structure which make it uninhabitable." Degnan, 696 P.2d at 434.

In Yepsen v. Burgess (Or. 1974), 525 P.2d 1019, upon which we relied in Chandler, the Oregon Supreme Court made an observation which is applicable to the implied warranty of habitability in Montana: "A more precise definition of the scope of this warranty must await delineation on a case by case basis." Yepsen, 525 P.2d at 1022. In both Chandler and Degnan, the dwellings were damaged so substantially as to preclude their use as residences. That is not the situation in the present case. Here the water collected next to the Samuelson home and eventually seeped into the basement after snow melt and rainfall. The evidence demonstrates that the water problem was an inconvenience but did not render the home uninhabitable.

We are now required to set forth a more precise definition of the implied warranty of habitability. In Chandler, 642 P.2d at 1032, we pointed out that the basic concern in applying the warranty is whether the defect relates to "useful occupancy" of the building. We hold that the implied warranty of habitability of a dwelling house is limited to defects which are so substantial as reasonably to preclude the use of the dwelling as a residence. That limitation is consistent with Chandler and Degnan. Even if the record is reviewed in its most favorable light from the standpoint of the Samuelsons, the evidence does not show that the defects were substantial enough reasonably to preclude use as a residence. We hold that the implied warranty of habitability is not applicable under the facts of this case. As a result, the case will be remanded to the District Court for retrial on theories other than the implied warranty of habitability.

## II

Did the District Court err by refusing to admit the construction contract into evidence?

The District Court refused to admit the contract between the Samuelsons and A.A. Quality because the court felt the contract was irrelevant. The parties agreed in discussions with the court that breach of contract was not being litigated. In spite of this, A.A. Quality argued that the contract was relevant to the implied warranty of habitability issue. In view of our determination on that issue, we need not rule on the relationship of the contract to the implied warranty of habitability.

A.A. Quality further argues that the contract was relevant to the negligence issue. All parties agree that the contract did not include a drainage system. We do not find it necessary to rule on the admissibility of the contract at the present time. It may be that the theories on retrial may require the admission of the contract.

## III

Did the District Court err by refusing defendant's proposed Instruction No. 19 which pertained to assumption of risk?

A.A. Quality contends that the trial judge should not have refused its proposed Instruction No. 19, which would have instructed the jury in terms of assumption of risk. Assumption of risk is an affirmative defense which must be plead affirmatively. Rule 8(c), M.R.Civ.P. "If an affirmative defense is not plead, it is generally waived." Chandler, 642 P.2d at 1032. This affirmative defense was not plead, and the District Court correctly refused to instruct the jury on assumption of risk.

In view of our holding, we need not consider A.A. Quality's proposed Instruction No. 16 which defined warranty. We reverse the District Court judgment and remand for retrial on the various theories with the exception of the implied warranty of habitability.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____
Justices

_____
District Judge Roy Rodeghiero
sitting for Justice Gulbrandson

_____
District Judge Peter Rapkoch
sitting for Justice McDonough

7

Mr. Justice John Conway Harrison, dissenting.

I dissent. In Chandler v. Madsen (1982), 197 Mont. 234, 642 P.2d 1028, this Court took a giant step forward in holding that a builder-vendor of a new home impliedly warrants that the residence is constructed in a workman-like manner and is suitable for habitation. We note that two major policy considerations support such a warranty. The first being that the buyer is in an unequaled bargaining position, and second that the builder-vendor is in a better position to discover, examine, and prevent defects. I feel the majority's holding in this opinion has taken a giant step backwards in protecting the consumer.

The Samuelsons had just paid $155,000 for their home. The affected areas in their basement included a guest bedroom, a storage area, and a recreation room. To find that their home was not damaged sufficiently to warrant our following the case of Chandler, shocks my credibility. As noted in the facts of this opinion, it cost $11,158.90 to properly remedy the problems and make the home livable. To hold that having as much as six inches of water in the basement in a new home does not violate the warranty of habitability is, in my view, a mistake. Had the basement not been repaired at a cost of over $11,000 by another contractor, about all that it could have been used for would have been a fishery during the periods that it leaked. Surely, a homeowner is entitled to more than that.

_____
Justice

Mr. Justice John C. Sheehy joins in the foregoing dissent of Justice John C. Harrison.

_____
Justice

8