No. 01-885

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 260

TODD and SUSAN SATTERFIELD,

      Plaintiffs and Appellants,

  v.

RAY MEDLIN d/b/a ULTIMATE CONSTRUCTION,

      Defendant and Respondent.

APPEAL FROM:    District Court of the Fourth Judicial District,
                     In and for the County of Missoula,
                     The Honorable Douglas B. Harkin, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

           Edward A. Murphy, Datsopoulos, MacDonald & Lind, P.C., Missoula, Montana

      For Respondent:

           John E. Bohyer, Fred Simpson, Phillips & Bohyer, P.C., Missoula, Montana

Submitted on Briefs: May 9, 2002

Decided: November 22, 2002

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1    Appellants Todd and Susan Satterfield ("Satterfields") filed a complaint against Respondent Ray Medlin ("Medlin"), doing business as Ultimate Construction, in the Fourth Judicial District Court, Missoula County, to recover damages as a result of Medlin's construction of a small log home. The Satterfields brought claims for breach of contract, breach of the implied warranty of habitability, and negligence. After a trial, the jury returned a verdict for Medlin. The Satterfields filed a motion for a new trial based on the District Court's refusal to instruct the jury on their claim for breach of implied warranty of habitability and further claim there was not substantial credible evidence to support the jury's verdict. The District Court denied the motion and Satterfields appeal. We affirm the District Court.

¶2    We address the following issues on appeal:

¶3    1.    Did the District Court abuse its discretion when it refused to instruct the jury on the implied warranty of habitability?

¶4    2.    Did substantial credible evidence exist to support the jury's verdict?

BACKGROUND

¶5    In December of 1996, Todd and Susan Satterfield entered into a written agreement with Medlin to construct a log home. The Satterfields already owned the land on which the house was to be built. Medlin and the Satterfields agreed to a purchase price of

2

$78,055.    The contract between Medlin and the Satterfields states, in part:

> All material is guaranteed to be as specified, and the above work to be performed in accordance with the drawings and specifications submitted for above work and completed in a substantial workmanlike manner . . . .

¶6   On June 5, 1998, the Satterfields filed a complaint against Medlin in the District Court alleging a multitude of problems with the house.   While the Satterfields allege many other errors and omissions by Medlin, central to the dispute is the absence of a six-by-six support column which was called for in the house plans. The support column was to run from a crawl space to the ridge beam, but was never installed.   The parties agree that the house is not sound without the support column.

¶7   Most other facts are sharply disputed by the parties.   Medlin testified that Todd Satterfield directed him not to install the column because it would block the view of the living room from the loft.   According to Medlin, Medlin advised Todd to consult an engineer about the support column, but Todd refused because it would cost additional money.   At trial, Medlin testified that several days later, Todd instructed Medlin to eliminate the support column from the plans.   The jury heard evidence that by that point Medlin had already constructed a 3' x 12" concrete pad on which the column would have been installed.   Todd denies ever having discussed the support column with Medlin, much less having ordered Medlin not to install it.

¶8   The parties agree that the structure is not sound without the support column.   However, expert witnesses for both the

Satterfields and Medlin testified that the home was safe to live in once a temporary support column was installed at a cost of approximately $500.

¶9 The Satterfields moved into the home in June of 1997 while construction was still underway. They continued to live in the home until summer of 1999. A friend of the Satterfields then moved into the home and lived there until April 2000.

¶10 We note that the Satterfields complained of other problems, in addition to the absent support column, including inadequate fasteners on the north gable wall.

¶11 The jury returned a verdict in favor of Medlin. Satterfields appeal the District Court's refusal to grant their motion for a new trial. They argue that the District Court wrongfully refused to instruct the jury on the implied warranty of habitability and further that there is not substantial credible evidence in the record to support the jury's verdict.

STANDARD OF REVIEW

¶12 The standard of review for a district court's refusal to give a proposed jury instruction is whether the district court abused its discretion. *Finstad v. W.R. Grace & Co.*, 2000 MT 228, ¶ 37, 301 Mont. 240, ¶ 37, 8 P.3d 778, ¶ 37.

¶13 The Court's scope of review of jury verdicts is necessarily very limited. We will not reverse a jury verdict which is supported by substantial credible evidence. Evidence may still be considered substantial even if it is inherently weak and conflicted. It is within the province of the jury to determine the

4

weight and credibility to be afforded the evidence. This Court must view the evidence in the light most favorable to the prevailing party. *Lee v. Kane* (1995), 270 Mont. 505, 510, 893 P.2d 854, 857.

¶14 The standard of review of a district court's denial of a motion for a new trial is manifest abuse of discretion. The decision to grant or deny a new trial is within the sound discretion of the trial judge and will not be disturbed absent a showing of manifest abuse of that discretion. *C. Haydon Ltd. v. MT Min. Properties, Inc.* (1997), 286 Mont. 138, 153, 951 P.2d 46, 55.

DISCUSSION

ISSUE ONE

¶15 Did the District Court abuse its discretion when it refused to instruct the jury on the implied warranty of habitability?

¶16 The Satterfields argue the District Court erred by refusing to instruct the jury on the implied warranty of habitability. Under Montana law, an implied warranty of habitability with respect to the sale of a new home is imposed on a builder-vendor. In this case, however, the parties agree that Medlin was not a builder-vendor; Medlin was a builder-contractor. The Satterfields already owned the land on which the home was built when they contacted Medlin about constructing the home. The home was not a "spec" home.

¶17 At trial, the debate about whether the implied warranty of habitability instruction should be given was focused on whether the

5

warranty should be extended to a builder-contractor. We need not address that issue to resolve the present appeal. Instead, our discussion shall focus on whether an implied warranty of habitability jury instruction would have been justified at all in this case.

¶18 This Court has held that "[t]he implied warranty of habitability of a dwelling house is limited to defects which are so substantial as reasonably to preclude the use of the dwelling as a residence." *Samuelson v. A.A. Quality Construction, Inc.* (1988), 230 Mont. 220, 223, 749 P.2d 73, 75. For example, in *Chandler v. Madsen* (1982), 197 Mont. 234, 642 P.2d 1028, due to problems caused by a condition of the soil upon which the house was built, doors and locks failed to operate, walls cracked, floors bulged, windows broke, plumbing bent, fixtures and walls separated, and the foundation lowered as much as 3.6 inches in spots. In that case we affirmed the determination of the District Court that the house was uninhabitable.

¶19 Here, Satterfields' house was not uninhabitable. In fact, Todd and Susan Satterfield moved into the house in June of 1997 and lived there until summer of 1999. After they moved out, a friend of the Satterfields moved into the house and lived in it until April of 2000.

¶20 Furthermore, two engineers testifying as expert witnesses on behalf of the Satterfields and Medlin, respectively, stated that the house was safe to live in with temporary modifications.

¶21 In light of the testimony of the engineers, combined with the fact that the Satterfields, and then their friend, lived in the house for almost three years, we conclude that the District Court did not abuse its discretion when it refused to instruct the jury regarding implied warranty of habitability. The Satterfields did not present enough evidence at trial to justify an implied warranty of habitability instruction, even if we assume that the theory extends beyond a builder-vendor.

ISSUE TWO

¶22 Did substantial credible evidence exist to support the jury's verdict?

¶23 After the jury returned a verdict in favor of Medlin, Satterfields moved for a new trial based on insufficiency of evidence to support the jury's verdict. The District Court denied the motion. Because we are limited in our review of the jury's verdict, we may only consider whether or not the verdict was supported by substantial credible evidence. This Court has defined substantial credible evidence as evidence which a reasonable mind might accept as adequate to support a conclusion. *Morgan v. Great Falls School District No. 1,* 2000 MT 28 ¶ 14, 298 Mont. 194, ¶ 14, 995 P.2d 422, ¶ 14.

¶24 The jury heard a great deal of conflicting evidence from the Satterfields and Medlin. Medlin testified that Satterfield continually interfered with the construction process. For example, Medlin contends that during one stage of construction, Satterfield only allowed him to work when Satterfield was present, which was

7

evenings and Sundays; that Todd Satterfield instructed him not to install the crucial support column, as discussed above; and that for a period of time, Medlin had to halt construction because Satterfield did not have the money to pay for Medlin's labor and expenses.

¶25 Satterfields, on the other hand, tried to persuade the jury that Todd never instructed Medlin not to install the support column and that Medlin lied in his testimony. The Satterfields also argue that they presented substantial evidence to support their claims for emotional distress. In their appellate brief, Satterfields summarily state, "Medlin had contracted to build a sound house. He did not do so and that is a breach of his contract with the Satterfields."

¶26 Both the Satterfields and Medlin presented evidence to support their own case. To Satterfields' chagrin, the jury evidently put more stock in Medlin's version of the events than it did Satterfields'. We conclude that the record contains substantial credible evidence to support the jury's verdict.

¶27 The judgment of the District Court is affirmed.


/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JIM RICE

8