No. 04-828

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 293

KIERAN McDERMOTT,

      Plaintiff and Appellant,

  v.

CARIE, LLC d/b/a HORSE PRAIRIE RANCH,

      Defendant and Respondent.

APPEAL FROM:     The District Court of the Fifth Judicial District,
In and For the County of Beaverhead, Cause No. DV 2002-12576,
Honorable Loren Tucker, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Geoffrey C. Angel, Angel Law Firm, Bozeman, Montana

      For Respondent:

          Jared S. Dahle, Nelson and Dahle, Billings, Montana

Submitted on Briefs:  June 15, 2005

Decided:  November 22, 2005

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Kieran McDermott (McDermott) suffered an injury while he was a paying guest at the Horse Prairie Ranch (HPR) and he sued alleging negligence and actual malice. A jury found in favor of HPR and awarded it the costs incurred in the action with interest. McDermott appeals from that judgment.

¶2 McDermott raises three issues on appeal:

(1) Whether the District Court abused its discretion when it admitted a redacted version of a prospective release from liability as evidence that McDermott was aware of the inherent risks involved in his participation in equine activities;

(2) Whether the District Court manifestly abused its discretion when it denied McDermott's motion for a new trial or judgment notwithstanding the verdict;

(3) Whether the District Court abused its discretion when it awarded costs to HPR. We affirm in part, reverse in part and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

¶3 McDermott and members of his family were paying guests at HPR, a dude ranch in Beaverhead County. Prior to participating in any activities at HPR, McDermott was required to sign a Waiver and Release Agreement (Agreement) purporting to prospectively excuse HPR from liability for any injuries he may suffer while participating in activities at the Ranch. On July 23, 2001, under the supervision of four wranglers, McDermott and ten other guests were saddling their horses in preparation for a horseback ride. McDermott's stepmother was among the guests preparing for the ride. Her horse was tethered by a lead

2

rope to a hitching post. While McDermott attempted to untie this rope, the horse pulled back. The rope, still wrapped around McDermott's finger, tightened, severing the distal portion of his right index finger.

¶4 McDermott sued HPR, alleging, among other things, that HPR was negligent in determining McDermott's ability to safely engage in the equine activity, in selecting a horse that McDermott could safely manage, in inspecting and maintaining the tack, and generally by failing to prevent injury to McDermott during his participation in equine activities. HPR advanced the affirmative defense that the statutory equine activity liability limitations, §§ 27-1-727(1) and 27-1-725, MCA (2003), shielded them from liability.

¶5 Although HPR conceded that the Agreement is not enforceable, they nonetheless filed a motion in limine seeking to have the Agreement admitted as an exhibit for the limited purpose of showing that McDermott was aware that equine activities are inherently dangerous. In its motion, HPR indicated that it was mindful that the language releasing HPR from liability may have a prejudicial effect on the jury and it expressed its willingness to redact the Agreement such that the potentially prejudicial language would not be included in the exhibit. McDermott responded with a motion in limine seeking to exclude the Agreement from being used for any evidentiary purpose. McDermott correctly observed that the Agreement was an illegal and unenforceable attempt to prospectively release HPR from tort liability and postulated, therefore, that it cannot be used for any purpose; otherwise, HPR would benefit from the illegal contract. After a hearing, which McDermott and his attorney

3

inexplicably failed to attend, the court permitted HPR to introduce a redacted version of the Agreement--excluding any language that prospectively releases HPR from liability.

¶6 At trial, HPR introduced an exhibit (Exhibit 62) that contained a redacted version of the Agreement. Exhibit 62 omitted all language in the Agreement that purported to release HPR from liability and only included those portions of the Agreement that the court deemed pertinent to McDermott's knowledge and comprehension of the risks involved in equine activities. As excised, Exhibit 62 read:

> 1. I acknowledge that inherent risks, hazards and dangers exist on and around (e.g. U.S. Forest, BLM federal lands, State lands, leased private lands, fishing rivers and lakes, and transportation associated with HPR activities and adventures) the HPR that cannot be eliminated, particularly in the working cattle ranch and wilderness environments for the types of activities and adventures in which I may participate, including but not limited to horseback riding. . . . Such risks, hazards and dangers include, among others, the unpredictable nature of horses . . . .
> . . .
> I agree to comply with all HPR rules and regulations, including those given verbally and in writing, and to participate in safety meetings and the presentation of any safety material, such as a video on horse safety, which are designed and offered to promote safety in HPR activities and adventures.
> . . .
> 3. Knowing the inherent risks, dangers and rigors involved in the activities and adventures in which I choose to participate at the HPR, I certify that I am fully capable of participating in the activities and adventures offered . . . .

¶7 During *voir dire*, a prospective juror had responded to questions from McDermott's counsel and the judge by indicating that he expected that McDermott had signed a waiver before participating in activities at HPR and that it would not be right to allow him to later invalidate that waiver. Counsel for HPR then engaged the prospective juror in a colloquy that culminated with a suggestion that a person who engages in horseback riding assumes the

4

risks involved in such activities. The record indicates that McDermott's counsel did not contemporaneously object to any of the questions asked of the prospective juror nor to any of the responses he provided. During closing argument, counsel for HPR made two comments to the effect that McDermott's signature on Exhibit 62 indicates that he acknowledged the risks inherent in horseback riding. McDermott's counsel did not object to these comments when they were issued. Not until a judgment had been entered against him did McDermott allege that it was error to allow any of these comments to be made in front of the jurors.

¶8 The jury found in favor of HPR. The jury indicated that HPR was not negligent. Judgment was entered requiring McDermott to pay the costs incurred by HPR in its defense, with interest. McDermott then moved for a new trial or judgment notwithstanding the verdict based on the admission of Exhibit 62 and the references that HPR made to the exhibit during closing argument, which purportedly violated the court's order admitting the exhibit in redacted form for a limited purpose. The District Court denied this motion.

¶9 HPR served McDermott with a Bill of Costs--a memorandum that listed the costs it had incurred in defending the action, accompanied by an affidavit verifying the accuracy of the enumerated costs. The affidavit states, in pertinent part, "Jared S. Dahle, being duly sworn, deposes and says: . . . . That to the best of his knowledge and belief, the items in the above Bill of Costs are correct, and that said costs have been necessarily incurred in said action." The affidavit, however, is signed by Mr. Dahle's partner, Randall Nelson, "for Jared S. Dahle." McDermott objected that the Bill of Costs fails to comply with the statutory

5

requirements governing bills of costs and affidavits. The trial court, finding the Bill of Costs procedurally adequate, overruled McDermott's objection. McDermott now appeals.

## STANDARD OF REVIEW

¶10 We review a district court's evidentiary rulings for an abuse of discretion. *Busta v. Columbus Hosp. Corp.* (1996), 276 Mont. 342, 353, 916 P.2d 122, 128. Absent a showing of such abuse we will not overturn a district court's ruling on the admissibility of evidence. *Christofferson v. City of Great Falls*, 2003 MT 189, ¶ 8, 316 Mont. 469, ¶ 8, 74 P.3d 1021, ¶ 8 (citation omitted). A court abuses its discretion if it acts "arbitrarily without employment of conscientious judgment or exceed[s] the bounds of reason resulting in substantial injustice." *VonLutzow v. Leppek*, 2003 MT 214, ¶ 14, 317 Mont. 109, ¶ 14, 75 P.3d 782, ¶ 14 (citation omitted).

¶11 We review a district court's denial of a motion for a new trial for a manifest abuse of discretion. *Satterfield v. Medlin*, 2002 MT 260, ¶ 14, 312 Mont. 234, ¶ 14, 59 P.3d 33, ¶ 14. A manifest abuse of discretion is one that is obvious, evident or unmistakable. *Shammel v. Canyon Resources Corp.*, 2003 MT 372, ¶ 12, 319 Mont. 132, ¶ 12, 82 P.3d 912, ¶ 12 (citation omitted).

¶12 We review a district court's award of costs to determine whether the district court abused its discretion. *Mularoni v. Bing*, 2001 MT 215, ¶ 22, 306 Mont. 405, ¶ 22, 34 P.3d 497, ¶ 22.

## DISCUSSION

***Issue 1: Whether the District Court abused its discretion when it admitted a redacted version of a prospective release from liability as evidence that plaintiff was aware of the inherent risks involved in his participation in equine activities.***

¶13     McDermott essentially reiterates the arguments that he has previously and repeatedly made respecting the admissibility of Exhibit 62.[1]  He contends that the Agreement is an illegal contract and is void.  Accordingly, he contends that it cannot be admitted for any purpose.  McDermott protests that during closing argument, HPR impermissibly suggested that McDermott's signature on Exhibit 62 indicated that he had assumed the risk of participating in equine activities.  Finally, McDermott argues that during *voir dire*, HPR violated the court's order limiting the contents and use of Exhibit 62 by insinuating that McDermott had signed a waiver and release of liability.

---

[1]  McDermott's arguments concerning Exhibit 62 are substantially identical to those proffered when he initially moved to have the Agreement excluded.

7

¶14 McDermott, however, failed to contemporaneously object to the purportedly impermissible comments made during *voir dire* and closing argument. A party that does not object to an alleged error forfeits the right to appeal that error. *Barnes v. United Industry, Inc.* (1996), 275 Mont. 25, 30, 909 P.2d 700, 703. To preserve an issue for appeal, a complaining party must object as soon as the grounds for objection are apparent. *Schuff v. Jackson*, 2002 MT 215, ¶ 30, 311 Mont. 312, ¶ 30, 55 P.3d 387, ¶ 30 (citations omitted) (relating to objections to evidence); *see also Reno v. Erickstein* (1984), 209 Mont. 36, 40, 679 P.2d 1204, 1206-07 (finding failure to object to allegedly impermissible statements made during closing argument was fatal to the success of the issue on appeal). If comments made during closing argument did impermissibly refer to the excised portions of the Agreement, the grounds for McDermott to object were apparent as soon as those comments were issued. Because McDermott failed to contemporaneously object to the comments made during closing argument, he has waived his right to appeal this issue.

¶15 By not timely objecting, one likewise waives the right to appeal purportedly impermissible comments made by a prospective juror and counsel during *voir dire*. *See Burlington Northern R. Co. v. Whitt* (Ala. 1990), 575 So.2d 1011, 1018 ("[f]ailure to lodge a timely objection to an improper question asked on voir dire waives the point as error on appeal") (citation omitted); *Nesseth v. Omlid* (N.D. 1998), 574 N.W.2d 848, ¶ 9 (holding that plaintiff forfeited any claim of error by failing to object to 35 improper comments made by opposing counsel during *voir dire*); *State v. Walton* (Ariz. 1989), 769 P.2d 1017, 1026-27, *aff'd by Walton v. Arizona* (1990), 497 U.S. 639, 110 S.Ct. 3047, 111 L.E.2d 511 (failure to object to prejudicial comments made by the trial judge during *voir dire* was waived when an

objection is not made during *voir dire*); *Cf. U.S. v. Alviso* (9th Cir. Cal. 1998), 152 F.3d 1195, 1198 (defendant, by objecting before trial, timely objected to the jurors hearing about his prior convictions when the court read his indictment, because an indictment presented at a pre-trial hearing is not evidence). McDermott argues that the line of questioning by HPR's attorney during *voir dire* amounted to improper argument in violation of the court's order excluding evidence of the pre-tort release portion of the Agreement. The Rules of Civil Procedure require that a party who has an opportunity to object to a ruling at the time it is made must "make[] known to the court the action which the party desires the court to take," "at the time the ruling or order of the court is . . . sought[.]" Rule 46, M.R.Civ.P. Courts have long recognized the folly in giving litigants an incentive to withhold all potential objections (including during *voir dire*) in the hopes that they could later avoid an adverse judgment by then appealing the alleged error to which they had previously acquiesced. *See Rasmussen v. Sibert* (1969), 153 Mont. 286, 295, 456 P.2d 835, 840 (lamenting that to allow a litigant to withhold an objection and then appeal on that basis "would permit a litigant to submit his case to the jury for a possible verdict in his favor, and in the event he was unsuccessful, would permit him another determination by another jury"); *see also State v. Powers* (Or. 1882), 10 Or. 145, 151. Therefore, we hold that McDermott's failure to timely object to the propriety of opposing counsel's comments made during *voir dire* extinguished his present claim of error. Accordingly, we will consider only McDermott's argument with respect to the admissibility of Exhibit 62.

9

¶16 HPR argues that Exhibit 62 was relevant to establish whether McDermott was aware of the inherent risks involved in equine activities. HPR notes that the statutory provisions relating to liability for equine activities shield it from liability if McDermott expected or was aware of the risks posed by the unpredictable nature of horses.

¶17 The statutory provisions limiting the liability of equine professionals provide protection from liability when the participant's injury is caused by risks inherent in equine activities that the participant expected or should have expected. Section 27-1-725, MCA, announces dual policies of the State of Montana:

> [A] person is not liable for damages sustained by another solely as a result of risks inherent in equine activities if those risks are or should be reasonably obvious, expected, or necessary to persons engaged in equine activities. . . . [A]n equine activity sponsor or equine professional who is negligent and causes foreseeable injury to a participant bears responsibility for that injury in accordance with other applicable law.

Among the statutorily enumerated risks inherent in equine activities is "the unpredictability of an equine's reaction to such things as . . . sudden movement . . . and unfamiliar . . . persons[.]" Section 27-1-726(7)(b), MCA. Finally, § 27-1-727(1), MCA, provides that "an equine activity sponsor . . . is not liable for an injury to . . . a participant engaged in an equine activity resulting from risks inherent in equine activities[,]"except as provided in subsection (2). Subsection (2) reads "[a]n equine participant shall act in a safe and responsible manner at all times to avoid injury to the participant and others and to be aware of risks inherent in equine activities." Section 27-1-727(2), MCA. Exactly how the Legislature envisioned subsection (2) as an exception to the general limitation on the liability of equine activity

10

sponsors is unclear. In light of the Legislature's express policy statement, we surmise that the intended effect of this provision is to retain liability for equine activity sponsors when a participant acts in a safe and responsible manner but remains totally ignorant of the risks inherent in equine activities.

¶18 The practical effect of these statutory provisions is to pronounce that equine activity sponsors do not have a duty to protect participants from either unavoidable risks, or the inherent risks of equine activities of which the participant is or should be aware. If injury is due to an inherent risk of equine activities and the participant expected that risk, then the equine activity sponsor cannot have been negligent--the injury was due to an unavoidable risk of which the participant was aware, so the sponsor could not have breached any duties to warn of or eliminate that risk. Thus, so long as the participant expects a risk inherent in equine activities, pursuant to the statute, the equine activity sponsor may not be held liable for injury suffered as a result of that risk.

¶19 We reiterate that the pre-tort release that McDermott signed was illegal. *See Miller v. Fallon County* (1986), 222 Mont. 214, 221, 721 P.2d 342, 346-47 (indicating that a prospective release from liability for negligence--a violation of law--is against the policy of the law and illegal, despite being a private contract between two persons without significant public implications). The Agreement that McDermott signed stated that he acknowledged the unpredictable nature of horses as an inherent risk of the activities of which he would partake and indicated that he knew the inherent risks involved in the activities in which he chose to participate. HPR has neither attempted to enforce the Agreement, nor to use Exhibit

11

62 as evidence that McDermott had waived his right to sue for injuries caused by the Ranch's tortious conduct. Rather, HPR removed any exculpatory language from Exhibit 62 and offered it to demonstrate that McDermott had notice of the inherent risks posed by the unpredictable nature of horses; thus, as affirmatively pleaded, HPR endeavored to establish that the statutory provisions shielded it from liability. For the following reasons, we conclude that the District Court did not err when it permitted HPR to make use of Exhibit 62, a redacted version of the illegal exculpatory agreement, to show that HPR was protected by the statute.

¶20 Evidence must be relevant in order to be admissible. Rule 402, M.R.Evid. Relevant evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, M.R.Evid. Courts may admit evidence that is admissible for one purpose but not admissible as to another purpose. Rule 105, M.R.Evid. The portion of the Agreement that survived as Exhibit 62 provided McDermott with notice that horseback riding involves inherent risks, including, specifically, the unpredictable nature of horses. By signing the Agreement, McDermott ostensibly indicated that he was aware of such risks. In other words, McDermott should have expected that the horses he worked with might react unpredictably to his presence. The statutory defenses proffered by HPR pertain to this exact scenario. Thus, McDermott's awareness of such risks is clearly of consequence to the application of the statutory defenses. Exhibit 62 is relevant to demonstrate that McDermott

12

was aware of the risks inherent in horseback riding and any potential for prejudice was minimized by excising all waiver-related language.

¶21    Other situations exist where courts admit evidence for a specific purpose while prohibiting its use for another purpose. For instance, evidence of subsequent remedial measures is not permitted to establish negligence or culpable conduct but it may be admitted for other purposes. Rule 407, M.R.Evid.; *see also Rieger v. Coldwell* (1992), 254 Mont. 507, 512, 839 P.2d 1257, 1259-60 (holding that the plaintiff should have been permitted to introduce evidence of subsequent repairs to light fixtures other than the one involved in the accident in order to refute testimony that defective sheetrock at the scene of the accident was its sole cause); *Lawlor v. County of Flathead* (1978), 177 Mont. 508, 515, 582 P.2d 751, 755 (holding that plaintiff's testimony concerning repairs made to a road by a county two days after an automobile accident should have been admitted to rebut testimony that repairs were infeasible); *Cech v. State* (1979), 184 Mont. 522, 531, 604 P.2d 97, 101-02 (holding that evidence of the installation of a guardrail following an accident was admissible to refute defendant's contentions that recovery areas were preferable to guardrails with respect to safety and economics). Similarly, although evidence of liability insurance is generally prohibited for purposes of establishing negligence or liability, we have held that it is error to exclude evidence of liability insurance when it is used only to establish that a party has complied with the terms of their underinsured motorist policy by settling with the tort-feasor's liability insurer before seeking relief from their own carrier. *Dill v. Thirteenth Judicial District*, 1999 MT 85, ¶ 22, 294 Mont. 134, ¶ 22, 979 P.2d 188, ¶ 22; *see also* Rule

13

411, M.R.Evid. Likewise, evidence acquired by an employer subsequent to discharge of an employee may not be introduced to provide collateral reasons for firing the employee, but may be used to substantiate the reasons that were previously enumerated in a discharge letter. *Jarvenpaa v. Glacier Elec. Co-op., Inc.*, 1998 MT 306, ¶ 41, 292 Mont. 118, ¶ 41, 970 P.2d 84, ¶ 41. McDermott offers no argument, let alone a persuasive one, as to why we should not afford similar treatment to a carefully redacted pre-tort release such as Exhibit 62.[2]

¶22    It is axiomatic that "[a]n appellant carries the burden of establishing error by the trial court," and must cite to authority that supports the theory being advanced on appeal. *Rieman v. Anderson* (1997), 282 Mont. 139, 147, 935 P.2d 1122, 1127 (citing Rule 23, M.R.App.P.). McDermott asserts that because the Agreement is illegal and unenforceable, it may not be used to his disadvantage for any purpose.[3]  He fails, however, to support this conclusory statement with any authority that stands for this proposition. Moreover, McDermott fails to

---

[2] McDermott's cites only to *Kopischke v. First Continental Corp.* (1980), 187 Mont. 471, 610 P.2d 668, to support his claim that the Agreement cannot be used for any purpose whatsoever. *Kopischke*, however, does not stand for this proposition. *Kopischke* relies heavily on *Haynes v. County of Missoula* (1973), 163 Mont. 270, 517 P.2d 370, wherein we affirmed a district court's ruling that a premium book was properly excluded from evidence. The premium book contained rules and regulations governing the county fair that appellants felt were admissible. *Haynes*, 163 Mont. at 285, 517 P.2d at 379. The premium book also contained exculpatory disclaimers of liability that were denied admission into evidence because they represented illegal contracts. In holding that the District Court properly excluded the premium book, we specifically noted that the County failed to offer into evidence the rules and regulations of the fair without the inadmissible exculpatory disclaimers. *Haynes*, 163 Mont. at 285, 517 P.2d at 379. In other words, we specifically suggested that the County should have done what HPR did here--excise the inadmissible portions of the premium books and offer the relevant portions into evidence.

[3] In addition to lacking support, this argument reaches too far. Surely, if McDermott were to contend that he was not actually present at the Ranch on the day when he signed the Agreement and so could not have viewed a video on horse safety on that day, the Agreement could be admitted as evidence that McDermott was at least present at the Ranch on that date.

cite any authority to support his position that Exhibit 62, a redacted version of the Agreement was improperly admitted. McDermott has not met his burden of establishing error by the trial court and has failed to show that the District Court abused its discretion when it admitted Exhibit 62.

¶23 We note that other courts have similarly permitted entry into evidence of redacted versions of written exculpatory agreements, though such agreements would not be enforceable or admissible as evidence that the signer had prospectively released another party from liability. *See Zinz v. Concordia Properties, Inc.* (Fla. Dist. Ct. App. 1997), 694 So.2d 120, 122 (indicating that it is appropriate to redact documentary evidence in order to remove all language pertaining to release and indemnification but to preserve those portions that are admissible because indicative that the plaintiff had notice that the property was under construction); *see also Poston v. Skewes* (4th Cir. Va. 2002), 49 Fed.Appx. 404, 405-06 (Unpublished)[4] (affirming a district court's holding that plaintiff had assumed the risk of a hunting outing when that holding depended on a redacted agreement that contained language acknowledging the risks involved, but excluded language releasing claims based on future negligence). Accordingly, we hold that admission of Exhibit 62 was not error.

***Issue 2: Whether the District Court manifestly abused its discretion when it denied McDermott's motion for a new trial or judgment notwithstanding the verdict.***

---

[4] *See* U.S. Ct. of App. 4th Cir. Rule 36(c), 28 U.S.C.A. (allowing citation to unpublished dispositions of the 4th Circuit under certain circumstances); *see also Strawbridge v. Sugar Mountain Resort, Inc.* (W.D.N.C. 2004), 328 F.Supp.2d 610, 611 (citing *Poston*).

15

¶24 McDermott argues that his Due Process rights were violated when Exhibit 62 was admitted over his objection and this violation was compounded by the purportedly impermissible comments made by opposing counsel during closing argument. McDermott claims that these errors materially affected his substantial rights, entitling him to a new trial. The District Court did not err in admitting Exhibit 62 and McDermott waived his right to appeal the propriety of the comments made during closing argument. Accordingly, the District Court did not abuse its discretion when it denied McDermott's motion for a new trial or judgment notwithstanding the verdict.

*Issue 3: Whether the District Court abused its discretion when it awarded costs to HPR.*

¶25 McDermott argues that the District Court misinterpreted the statutory requirements of § 25-10-501, MCA, governing the contents of a bill of costs and improperly concluded that HPR's Bill of Costs complies therewith. McDermott contends that Randall Nelson, who signed the verification attesting that the costs enumerated in the memorandum were correct and necessarily incurred, was not actually sworn and did not attest to his personal knowledge; rather, Mr. Nelson signed a document which purported to present Mr. Dahle's knowledge and belief and which indicated that Mr. Dahle had been duly sworn. Moreover, he contends, the notary does not attest that Mr. Dahle is the person on behalf of whom Mr. Nelson executed this sworn statement. Although conceding that the verification of the Bill of Costs was signed in the absence of Mr. Dahle by his partner Mr. Nelson, HPR retorts that the verification in the Bill of Costs complies with § 25-10-501, MCA, in every material respect and the Bill of Costs should be granted in its entirety.

16

¶26 In order to recover costs, the party who receives a favorable judgment must serve the adverse party within five days with:

> a memorandum of the items of his costs and necessary disbursements in the action or proceeding, which memorandum must be verified *by the oath of* the party, *his attorney* or agent, or the clerk of his attorney, *stating that to the best of his knowledge and belief* the items are correct and that the disbursements have been necessarily incurred in the action or proceeding.

Section 25-10-501, MCA (emphasis added). By statute, a notary who takes a verification upon oath must "determine, either from personal knowledge or from satisfactory evidence, that the person *appearing before the officer and making the verification* is the person whose true signature is on the statement verified." Section 1-5-603(2), MCA (2003) (emphasis added). Thus, the statute requires the personal physical presence of the person making the verified statement. Consistent with this, we have defined an affidavit as "a written statement, under oath, sworn to or affirmed by the person making it before some person who has authority to administer an oath or affirmation. . . . *The maker must have personal knowledge of the information contained in the statement and must swear to its validity.*" *Mountain States Resources, Inc. v. Ehlert* (1981), 195 Mont. 496, 503, 636 P.2d 868, 872 (emphasis added) (citations and quotations omitted); *see also* § 26-1-1001, MCA. Mr. Nelson was present to subscribe to and swear to the statement before the notary who administered the oath, as indicated by his signature on the verification. Accordingly, Mr. Nelson was the maker of the statement contained in the verification. Yet, the statement contained in the verification gives no indication that Mr. Nelson has personal knowledge of the information contained in the statement and does not state that Mr. Nelson swore to its validity. Rather,

17

the verification indicates that it was subscribed and sworn to by Mr. Dahle. Mr. Dahle, however, was not actually present to be sworn by the notary, subscribe to his statement or sign the verification. The affidavit verifying the Bill of Costs is improper as a matter of formality.

¶27 This formally flawed affidavit is functionally defective as well. The Legislature imposed the requirement that bills of costs be verified upon oath to ensure that these documents reliably reflect actual costs incurred. The person who swears to the accuracy of the enumerated costs may be held accountable if it is later shown that they have knowingly overstated their costs. *See* § 45-7-202, MCA (indicating that such conduct constitutes false swearing punishable by fine and/or imprisonment). To swear an absent person who does not actually sign the statement is functionally equivalent to having an unsworn statement. The person who has purportedly subscribed to and sworn to the truth of the statement did not in fact "make" or sign the statement. Likewise, no documentation exists that the person who actually "made" the statement was under oath when he attested to its truth by signing it. Nobody could be prosecuted for false swearing, the consequences of which render sworn statements reliable. This is the functional defect with the verification in this case. There is no indication that Mr. Nelson made a sworn statement and there is no indication that Mr. Dahle attested to the validity of the statement which he purportedly made, as he did not sign it, and being absent, could not have been properly sworn. This fatal deficiency renders the Bill of Costs invalid. Accordingly, the District Court abused its discretion when it awarded costs to HPR. The court's order awarding costs must be vacated.

18

¶28 We affirm with respect to issues one and two and reverse with respect to issue three and remand for entry of an order consistent with this Opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE