No. 03-158

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 69

GARY L. BYERS; TIMOTHY W. BYERS; GARY L.
BYERS TRUST; TIMOTHY W. BYERS TRUST; and
G & T HOLDINGS, LLP,

       Plaintiffs and Appellants,

    v.

STEVEN E. CUMMINGS and CHRISTENSEN,
MOORE, COCKRELL, CUMMINGS and AXELBURG, P.C.,

       Defendants and Respondents.


APPEAL FROM:    District Court of the Eleventh Judicial District,
                 In and for the County of Flathead, Cause No. DV-01-211A,
                 The Honorable Ted O. Lympus, Judge presiding.


COUNSEL OF RECORD:

       For Appellants:

           Norman L. Newhall and Stacy Tempel-St. John, Linnell, Newhall, Martin &
           Schulke, P.C., Great Falls, Montana

       For Respondents:

           Gary L. Graham, Garlington, Lohn & Robinson, PLLP, Missoula, Montana


                           Submitted on Briefs:  August 28, 2003

                                 Decided:  March 23, 2004

Filed:


                                 Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1     Gary Byers, Timothy Byers, Gary L. Byers Trust, Timothy W. Byers Trust, and G & T Holdings, LLP, (Byers) appeal from a jury verdict from the Eleventh Judicial District Court, Flathead County, finding Steven Cummings and Christensen, Moore, Cockrell, Cummings, and Axelburg, PC (Cummings), not negligent in their representation of the Byers during the sale of their company, Creative Sales and Manufacturing (CSM). We affirm. The issues presented on appeal are:

¶2     1. Whether substantial credible evidence existed to support a jury verdict of "no negligence."

¶3     2. Whether Cummings' change of testimony on a critical issue resulted in surprise which ordinary prudence could not have guarded against.

¶4     3. Whether the trial court erred in its failure to instruct on the duty mandated by Rule 1.4(b), Montana Rules of Professional Conduct.

¶5     4. Whether the trial court erred in its failure to instruct on Plaintiffs' theory of the case.

¶6     5. Whether the jury instructions, taken as a whole, were internally inconsistent and incomplete.

¶7     6. Whether the trial court erred in admitting evidence of third party fault.

¶8     7. Whether the trial court erred when it denied the Byers' Motion *in Limine* to exclude evidence regarding the Byers' repurchase of a portion of the assets from Finova and subsequent commencement of a new business.

2

## BACKGROUND

¶9    The Byers owned CSM, a business that produced a variety of small products ranging from knife sharpeners to mirror extenders that were sold throughout the United States. They contracted with Geneva Financing Companies, Inc., to find a buyer for CSM. Geneva found a buyer referred to as Main Street Products (Main Street).

¶10    The Byers signed a letter of intent, dated April 6, 1998, proposing to sell CSM and associated patents to Main Street for $12,000,000; $4,000,000 payable at closing and $8,000,000 in future payments. They were not represented by Cummings when they signed the letter. The letter of intent set out general terms, including a section explaining Main Street's financing and potential subordination of the $8,000,000 to the main loan needed to purchase CSM. The letter explicitly stated that "a binding agreement will exist only upon execution of a definitive stock purchase agreement and consulting, non-compete and sales commission contracts on the Closing Date."

¶11    Cummings commenced representation of the Byers' interest on May 26, 1998. He testified that during the initial meeting with Gary, he read over the letter of intent and explained to Gary that he was not bound by this letter. He also noted that the $8,000,000 would be subordinate to Main Street's lender. He followed up with a letter dated May 28, 1998, spelling out his concerns including the possibility of the new company going into bankruptcy, the $8,000,000 being subordinate to Main Street's lender and the vagaries of bankruptcy laws. He informed his clients that they could potentially end up with nothing. He advised the Byers that future payments were subject to significant risks. Cummings

3

viewed his responsibilities to the Byers as advising them of the risks involved in the transaction, explaining the transaction to them in order for them to make informed decisions, and completing legal paperwork.

¶12 On July 16, 1998, the Byers signed a document referred to as the "Commitment Letter" delineating the sale price and specifics about the Agreement of Purchase and Sale of Stock, Agreement of Purchase and Sale of Patents and the Lease. According to Cummings' testimony, the Commitment Letter did not set out the provisions of the anticipated subordination agreement because the terms were not determined at that point in time. He also testified that he thought the Byers could not be bound by this letter without signing the subordination agreement, as it was necessary to the transaction.

¶13 When Cummings ultimately received the Subordination and Standstill Agreement (Subordination Agreement), he asked Tom Wynne, the Byers' financial consultant, to review the document, specifically the "financial covenants" which restricted Main Street from paying the Byers unless it complied with such conditions. Wynne informed Cummings that the covenants appeared reasonable to him. Cummings participated in negotiations of the Subordination Agreement for the benefit of his clients. Main Street and the lender entered into a collateral document, the Loan and Security Agreement, including its attached Schedule (Loan Agreement). It defined some terms that were in the Subordination Agreement and set forth additional covenants, however, the Byers were not a party to this document, therefore, Cummings testified that he did not participate in negotiations regarding the Loan Agreement nor did he review it prior to closing.

¶14    On July 27, 1998, the parties executed pertinent documents and closed the sale of CSM. The Byers received the first three quarterly payments, however, on May 7, 1999, Main Street notified them that it would be unable to make payments due to non-compliance with the financial covenants of the Loan Agreement. As a result of non-compliance, Main Street no longer paid the Byers the required quarterly payments.

¶15    On March 26, 2001, the Byers filed a complaint against Cummings maintaining numerous allegations of legal malpractice. The trial began on October 7, 2002. The Byers presented Kristen Juras as their expert and Cummings presented Thomas Boone as his expert; Juras and Boone both testified concerning the standard of care of an attorney in such a transaction. In response to the standard established by both experts, the Byers proposed a jury instruction based upon Rule 1.4(b), Montana Rules of Professional Conduct, however, the court refused to give the instruction. On October 11, 2002, the jury returned a verdict in favor of Cummings, finding he was not negligent in his representation of the Byers. It is from this verdict that the Byers appeal.

## STANDARD OF REVIEW

¶16    This Court's scope of review of jury verdicts is necessarily very limited, and we will not reverse a jury verdict which is supported by substantial credible evidence. *Satterfield v. Medlin*, 2002 MT 260, ¶ 13, 312 Mont. 234, ¶ 13, 59 P.3d 33, ¶ 13. It is within the province of the jury to determine the weight and credibility afforded to the evidence, and it is not this Court's function to agree or disagree with the jury's verdict. Thus, we must view the evidence in the light most favorable to the prevailing party. *Magart v. Schank*, 2000 MT

5

279, ¶ 4, 302 Mont. 151, ¶ 4, 13 P.3d 390, ¶ 4.

¶17 The standard of review for a district court's refusal to issue a proposed jury instruction is whether the court abused its discretion. *Finstad v. W.R. Grace & Co.*, 2000 MT 228, ¶ 37, 301 Mont. 240, ¶ 37, 8 P.3d 778, ¶ 37. In reviewing for abuse of discretion, the reviewing court does not determine whether it agrees with the trial court. Rather, it considers whether the trial court, in its exercise of discretion, acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason in view of all circumstances. *Schuff v. A.T. Klemens & Son*, 2000 MT 357, ¶ 27, 303 Mont. 274, ¶ 27, 16 P.3d 1002, ¶ 27.

## DISCUSSION

## ISSUE ONE

¶18 Whether substantial credible evidence existed to support a jury verdict of "no negligence."

¶19 In asserting there was insufficient evidence to support the no negligence verdict, the Byers argue Cummings had a duty to obtain and review all the relevant documents in order to explain the nature of the transaction to the extent that it was necessary in order to enable them to make an informed decision. In failing to perform this duty, the Byers maintain that Cummings was clearly negligent when he allowed them to make a binding commitment to sell CSM before he had adequately reviewed the pertinent documentation and subsequently explain the documents. Central to this argument is their contention that Cummings neglected to obtain and review the Loan Agreement which contained term definitions and additional

6

financial covenants that the Subordination Agreement did not set forth, yet had a risk impact on the ability of the Byers' to receive their scheduled payments.

¶20    Cummings counters that the evidence presented supported the jury's finding of no negligence and his representation of the Byers was reasonable under the circumstances. He asserts that the main premise of the Byers' argument fails because even after signing the Commitment Letter, they were not bound to sign the Subordination Agreement. He also explained that his failure to review the Loan Agreement and reliance on the appellants' financial consultant in regards to financial covenants in the Subordination Agreement fell within the reasonable bounds of fulfilling his duty of care. Relying upon *Jacques v. Montana Nat. Guard* (1982), 199 Mont. 493, 649 P.2d 1319, he maintains that the jury had all of the pertinent expert testimony in front of it, and it was entitled to weigh such testimony, accepting or rejecting it. The jury did just that when it found Cummings had not been negligent.

¶21    We are limited in our review of jury verdicts, therefore this Court will only consider whether or not substantial evidence supports the jury verdict. *See Satterfield*, ¶ 23. Evidence is substantially credible when a reasonable mind accepts it as adequate to support a conclusion. *Satterfield*, ¶ 23.

¶22    The jury heard five days of testimony presented by both parties. The Byers and Cummings presented expert testimony regarding the standard of care expected of an attorney in a transactional setting. Both experts essentially agreed that an attorney has a duty to explain a prospective transaction to a client to an extent reasonably necessary, permitting the

7

client to make informed decisions regarding the transaction. Subsequently, the witnesses testified as to the timing of Cummings' review and explanation of documents to the Byers and particularly his lack of review and explanation of the Loan Agreement. Cummings provided extensive testimony as to why he did not review such agreement: (1) familiarity with similar financial covenants; (2) no ability to negotiate the financial covenants within the agreement because his clients were not a party to it; and (3) his presentment of the Subordination Agreement to the Byers' financial consultant who concluded the covenants within were reasonable.

¶23    After review of the record and the instructions submitted to the jury, when viewed in the light most favorable to Cummings, we conclude there was substantially credible evidence to support the jury's verdict on the absence of negligence. Boone testified that Cummings examined the critical documents and met his duty to his clients. He further testified that it was within the standard of care to rely on Wynne's opinion as to the reasonableness of the financial tests contained in the Subordination Agreement. Although Juras presented a different view on some issues, the jury was entitled to reject her testimony. Cummings testified that he advised the Byers that if the buyers did well financially, they would be paid and, conversely, if the company did not do well, they would not get paid. Both sides presented their cases and theories to the jury. In the final analysis, the jury did not believe Cummings was negligent. We conclude there was substantial credible evidence to support its decision.

ISSUE TWO

8

¶24    Whether Cummings' change of testimony on a critical issue resulted in surprise which ordinary prudence could not have guarded against.

¶25    The Byers assert that evidence of Cummings' failure to obtain the Loan Agreement and resultant failure to advise them of associated risks played a key part in their case. In a pre-trial deposition, Cummings testified that his file had not contained the Loan Agreement prior to closing the sale. At trial, seemingly in contradictory fashion, he testified that he did review part of the Loan Agreement. Consequently, the Byers claim this change of testimony caught them off guard. They allege that Cummings' failure to supplement his response regarding a central issue in the case, in violation of Rule 26(e)(2), M.R.Civ.P., rendered them unable to effectively prepare for cross-examination and likely affected the verdict.

¶26    Conversely, Cummings testified at trial that at his deposition he did not recall receiving any part of the Loan Agreement and could not locate it at the time of the deposition. However, he stated that he must have seen it due to comments and proposed amendments he made regarding the Subordination Agreement. Having found a fax cover sheet, he testified at trial that he did receive a fifteen page fax at the relevant time, and assumed it was the schedule to the Loan Agreement.

¶27    As it turns out, this assumption was incorrect. Counsel for Byers skillfully cross-examined Cummings and established that in fact he had never reviewed or obtained a copy of the Loan Agreement prior to closing. On appeal, Cummings argues that the jury ultimately was left with the correct information–Cummings did not have a copy of the Loan Agreement during the critical time in question. Therefore, the failure to supplement the

response was a nonissue and any failure to supplement the discovery responses under the circumstance was harmless.

ISSUE THREE

¶28    Whether the trial court erred in its failure to instruct on the duty mandated by Rule 1.4(b), Montana Rules of Professional Conduct.

¶29    Rule 1.4(b) of the Montana Rules of Professional Conduct requires attorneys to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."  The Byers proposed the plaintiffs' proposed Instruction No. 5, "Steven Cummings had a duty to explain the transaction to the extent reasonably necessary to permit Gary and Tim Byers to make informed decisions regarding the transaction."  When the District Court refused to adopt the Byers' proposed instruction, it did so on the grounds that this Court has said that the Montana Rules of Professional Conduct do not establish substantive legal duties.  *See Carlson v. Morton* (1987), 229 Mont. 234, 239, 745 P.2d 1133, 1136-37.

¶30    At the outset, we note that the expert testimony presented by both sides to this dispute essentially mirrored the provisions of Rule 1.4(b).  Both Boone and Juras testified that an attorney has a duty to explain the transaction to the extent necessary to permit a client to make an informed decision regarding the transaction.  Furthermore, the judge instructed the jury in traditional form in this legal malpractice case, that is: he explained the elements of legal malpractice; he allowed the experts to testify about the standard of care and give an opinion of whether Cummings met the standard; he allowed the Byers to fully and

10

completely argue the case and their theories; and, he informed the jury that it could accept or reject any expert testimony. It is hard to imagine how the failure to give plaintiffs' proposed Instruction No. 5 would have been prejudicial in any event.

¶31 Nonetheless, we conclude the District Court correctly denied the proposed instruction. As we stated in *Carlson*, in a legal malpractice case a plaintiff must prove that the defendant breached a legal duty established through expert testimony, not a breach of various disciplinary rules. *Carlson*, 229 Mont. at 240, 745 P.2d at 1137. We also reiterated this principle in *A.T. Klemens & Son* where we stated, "Rules of Professional Conduct do not establish substantive legal duties–they neither create, augment nor diminish any duties." *A.T. Klemens & Son*, ¶ 34 (quoting *In re Kirsh* (9th Cir. 1992), 973 F.2d 1454, 1461). We continue to believe that it is entirely appropriate to use the general language of ethical rules in describing one's ethical duty to a client, however, it is improper to explicitly refer to the specific rule or to instruct the jury by referring to the rule in question. Although the Byers point out that some jurisdictions have a different view, we are not persuaded they are taking the correct course.

## ISSUE FOUR

¶32 Whether the trial court erred in its failure to instruct on Plaintiffs' theory of the case.

¶33 In the alternative, the Byers argued that they still should have been entitled to plaintiffs' proposed Instruction No. 5, because experts establish the standard of care in malpractice claims, and the instant experts agreed that Rule 1.4(b) controlled the standard of care in this case. This being the theory of their case, the Byers maintain that they had the

11

right to jury instructions adaptable to their theory of the case if supported by law and the District Court ignored this right. *See Tacke v. Vermeer Mfg. Co.* (1986), 220 Mont. 1, 11-12, 713 P.2d 527, 534.

¶34    Moreover, the Byers allege that the District Court incorrectly refused plaintiffs' proposed Instruction No. 5, for the reason that it was not found in the Montana Pattern Jury Instructions (MPI). *See Chambers v. Pierson* (1994), 266 Mont. 436, 441, 880 P.2d 1350, 1354-55. They rely upon *Schuff v. Jackson*, 2002 MT 215, 311 Mont. 312, 55 P.3d 387, to support their position that the court abused its discretion when giving the MPI general duty of care instructions when it should have informed the jury of a possible heightened duty of care.

¶35    Cummings counters stating that the Plaintiffs' theory of their case was that Cummings did not adequately explain the transaction to the Byers, therefore the court's use of the MPI for legal malpractice cases was appropriate. Cummings also claims that the Byers' reliance on *Schuff* is misguided, because in that case the boat driver had a statutory heightened duty of care and there is no statutory heightened standard in this case. *Schuff*, ¶ 37-39. Furthermore, he states that the court did, in fact, instruct the jury about the heightened standard of care by informing them that Cummings must use the care and skill ordinarily used by qualified specialists practicing in the same field of law in Montana.

¶36    In light of our resolution of Issue Four, we agree with Cummings and conclude that the District Court did not abuse its discretion when it refused to issue plaintiffs' proposed Instruction No. 5.

12

## ISSUE FIVE

¶37 Whether the jury instructions, taken as a whole, were internally inconsistent and incomplete.

¶38 Byers argue that the court provided the jury with inconsistent, incomplete and essentially confusing instructions. Much of their argument hinges on the court's decision to refuse to instruct on Rule 1.4(b). Instruction No. 2 instructs the jury to take the law in this case from the instructions alone. Instruction No. 3 informs the jury that it can weigh expert opinion, yet it is not bound by such opinion. To illustrate their inconsistency argument, the Byers explain that Instruction No. 13 states that an attorney "is negligent if his error in judgment . . . is due to failure to perform any of his duties as defined in these instructions." Although Instruction Nos. 8 and 9 are phrased in terms of "duties," the instructions given as a whole to the jury did not contain any standard of conduct.

¶39 The Byers maintain that the instructions were incomplete because such instructions did not advise the jury that it must determine the standard of care from expert testimony. They complain that this was further complicated by the fact that the court denied plaintiffs' proposed Instruction No. 5, and thus the standard of care was not set forth within the jury instructions.

¶40 Cummings asserts that the jury was advised that he had a duty to use the care and skill ordinarily used by lawyers practicing in this area of law in Montana, and thus a jury would not be confused if an instruction was not reciting each and every duty discussed by an expert. Relying upon *Fillinger v. Northwestern* (1997), 283 Mont. 71, 76, 938 P.2d 1347, 1351,

14

when taking the jury instructions as a whole, he maintains that the Byers' substantial rights were not affected, and thus could not show prejudice. We agree.

¶41    This Court has previously stated that a district court has discretion when it decides how to instruct the jury, taking into consideration the parties' theories, and that we will not overturn the court's decision absent an abuse of discretion. *Kneeland v. Luzenac America, Inc.*, 1998 MT 136, ¶ 35, 289 Mont. 201, ¶ 35, 961 P.2d 725, ¶ 35. In examining whether jury instructions were properly given or refused, we consider the instructions in their entirety to determine whether they state the applicable law of that case. *Kneeland*, ¶ 35.

¶42    As we previously stated in this Opinion, we conclude the District Court adequately instructed the jury. This is not to say one could not have crafted other instructions that may have better assisted the jury in considering the law applicable to this case. The proper question to ask, however, is whether the District Court abused its discretion in the instruction phase of this trial. We see no such abuse. The jury was instructed in general terms on the elements of legal malpractice and both sides presented detailed expert testimony addressing the standard of care. We are unconvinced that the jury was potentially misled or confused resulting in prejudice to the Plaintiffs.

ISSUE SIX

¶43    Whether the trial court erred in admitting evidence of third party fault.

¶44    The Byers allege that introducing evidence regarding Tom Wynne and Geneva Finance employees violated § 27-1-703(6)(c), MCA, because such evidence pertained to third party fault. Section 27-1-703(6)(c), MCA, provides, "[e]xcept for persons who have

15

settled with or have been released by the claimant, comparison of fault with any of the following persons is prohibited . . . any other person who could have been, but was not, named as a third party." To support their argument, the Byers assert that Cummings failed to join any third parties to this action, and therefore, any evidence of third party conduct or fault should have been excluded.

¶45    Cummings responds stating that, in fact, neither party offered evidence regarding any third party fault. Additionally, the jury instructions specifically directed the jury to solely concentrate on Cummings' liability, not any other party. Cummings claims that the only reason any evidence was presented as to the involvement of others in the transaction was to explain how the transaction came together and the role of each who participated in the transaction.

¶46    Here, the record is replete with testimony regarding information provided to Cummings by non-parties. However, we are not persuaded by the Byers that such evidence exemplified implication of fault of another. It merely reflected other parties' participation in the transaction. Therefore, the District Court did not abuse its discretion.

ISSUE SEVEN

¶47    Whether the trial court erred when it denied the Byers' Motion *in Limine* to exclude evidence regarding the Byers' repurchase of a portion of the assets from Finova and subsequent commencement of a new business.

¶48    Once Main Street defaulted on their loan and Finova put the assets up for sale, the Byers repurchased some of the assets for $325,000 and used the assets to start a new

16

business. They allege that the trial court's ruling allowed Cummings to suggest that the Byers had mitigated damages so successfully that they in fact suffered no damage. Furthermore, the Byers assert they had no obligation to mitigate for such a risky venture, relying upon *Halliburton Oil Well Cementing Co. v. Millican* (5th Cir. 1948), 171 F.2d 426, 430, and that such evidence was irrelevant.

¶49 The jury found no negligence on Cummings' part, therefore he was not legally liable. As a result of this Court affirming the jury verdict on the issue of liability, any error related to the damages aspect of the trial would be harmless. Therefore, we need not reach the merits of this issue.

¶50 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JOHN WARNER
/S/ JIM RICE