FILED

06/25/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0499

DA 21-0499

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 132

---

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

ESANDRO ROMAN RODRIGUEZ,

      Defendant and Appellant.

---

APPEAL FROM:    District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. CDC-19-793
Honorable John A. Kutzman, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

      Chad Wright, Appellate Defender, Michael Marchesini, Assistant Appellate
Defender, Helena, Montana

    For Appellee:

      Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

      Joshua A. Racki, Cascade County Attorney, Matthew Robertson, Deputy
County Attorney, Great Falls, Montana

---

      Submitted on Briefs:  October 25, 2023

      Decided:  June 25, 2024

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Esandro Rodriguez (Rodriguez) was convicted by a jury of aggravated kidnapping, accountability for aggravated burglary, and two separate counts of accountability for assault with a weapon. Rodriguez appeals, contending there was insufficient evidence to support his conviction of aggravated burglary by accountability. Alternatively, Rodriguez argues his convictions for aggravated burglary by accountability and assault with a weapon by accountability against Leah Gray violate § 46-11-410, MCA, the multiple conviction statute, which warrants plain error reversal or reversal for ineffective assistance of counsel in failing to object to the duplicative convictions.

¶2 We restate the issues as follows:

1. *Whether there was sufficient evidence to convict Rodriguez of accountability for aggravated burglary.*

2. *Whether Rodriguez's convictions for assault with a weapon by accountability and aggravated burglary by accountability violate § 46-11-410, MCA?*

We affirm on Issue 1 and reverse on Issue 2.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On September 27, 2019, around 10:00 p.m., Jesse Daniels (Daniels) and his girlfriend, Lauren Aviles (Aviles), met up with Rodriguez for the purposes of finding Michael Crawford (Michael) and collecting money Michael owed them for a past drug transaction, and ultimately purchasing methamphetamine for themselves. Aviles drove Daniels and Rodriguez in her vehicle, an older model white Mercury Grand Marquis, toward Countryside Village in Great Falls, where Michael's mobile home was located. As

2

they neared the Village, they saw Michael, Michael's girlfriend, Amanda, and Michael's mother's partner, "Junior," walking along the street toward Walmart.

¶4    Daniels confronted Michael about the money he owed them. Michael ran away, and Daniels and Rodriguez held Amanda and Junior at gunpoint and forced them into the car. While the two men kept their guns trained on Amanda and Junior, Aviles drove to Michael's mobile home. Daniels demanded that Junior call Michael. Rodriguez threatened Amanda and held a gun to her lower back for the duration of the drive.

¶5    When the group arrived at the home, Michael's mother, Leah, was smoking a cigarette on the porch. Moments before, Michael had arrived at the home, told Leah about Amanda and Junior being taken, and ran into the home. Daniels, Rodriguez, Junior, and Amanda walked up to mobile home, and Daniels asked Leah where Michael was. Behind Daniels, Rodriguez, still holding his gun, stood with Amanda and Junior. Leah told Daniels that Michael was not there, and when Daniels moved toward the door, Leah grabbed his arm and told him not to go inside. Daniels said he "wasn't playing," and pressed a gun to Leah's stomach. Leah initially froze, but then pushed Daniels, and she and Junior ran inside, and shut and locked the door. Daniels went to the annex door on the mobile home and began knocking and pounding on that door, yelling for Michael to come out.

¶6    Leah's daughter-in-law, Celeste, opened that door, unaware that Daniels and Rodriguez were armed. She was startled by the commotion and had intended on telling them that her two-year-old daughter was trying to sleep. However, Daniels returned to the main door. He barged into the living room and knocked over Celeste's 2-year-old

3

daughter. Leah and Junior ran into the kitchen. Chasing after them, Daniels, gun in hand, ran past the dining area and into the kitchen. Leah yelled for her mother, stating that Daniels had a gun and telling her to call 911. Leah heard her two-year-old granddaughter crying and spun around as Junior rushed by her in the kitchen, where Daniels entered and came face to face with Junior. When Daniels realized that police were being contacted, he turned and fled. Junior testified that Daniels held a gun to him in the car and outside the home, but not inside the home. While Daniels was inside, Rodriguez, Aviles, and Amanda remained outside.

¶7      After Daniels fled, Daniels and Rodriguez forced Amanda back into Aviles's car and drove off. Rodriguez kept his gun trained on Amanda. Later that night, they met Michael at a McDonalds's parking lot, and he paid them the money they demanded. Daniels then told Rodriguez to release Amanda. Thereafter, Daniels, Aviles, and Rodriguez drove to Oregon.

¶8      On October 9, 2019, a Great Falls Police Department (GFPD) officer conducted a traffic stop of Aviles's white Mercury Grand Marquis, which matched the description of a vehicle police were attempting to locate, and alerted Officer Hronek, who had been looking for Daniels, Rodriguez, and Aviles. Daniels was then driving the vehicle, and Aviles was a passenger. GFPD detectives obtained a search warrant for Aviles's vehicle, finding weapons and a notebook and pictures belonging to Rodriguez in the car. Rodriguez was located and questioned, and ultimately charged with several offenses arising out of the incident: Count I, aggravated kidnapping of Junior; Count II, aggravated kidnapping of

Amanda; Count III, accountability to assault with a deadly weapon against Junior; Count IV, accountability to aggravated burglary; Count V, accountability to assault with a weapon against Leah; and Count VI, accountability to assault against Celeste. Rodriguez was tried and convicted on Counts II through V; he was acquitted on Count I. Count VI was dismissed at trial upon the State's motion.

¶9 Rodriguez appeals, raising issues that challenge his convictions of Count IV and V. Additional facts will be discussed herein.

## STANDARD OF REVIEW

¶10 A claim of insufficiency of evidence is reviewed de novo regardless of whether it was raised below. *State v. Robertson*, 2014 MT 279, ¶ 16, 376 Mont. 471, 336 P.3d 367. "When reviewing a challenge to the sufficiency of the evidence, this Court determines whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Christensen*, 2020 MT 237, ¶ 11, 401 Mont. 247, 472 P.3d 622. Thus, "[i]t is within the province of the jury to determine the weight and credibility afforded to the evidence, and it is not this Court's function to agree or disagree with the jury's verdict." *Byers v. Cummings*, 2004 MT 69, ¶ 16, 320 Mont. 339, 87 P.3d 465. The State must prove every fact necessary to constitute the crime beyond a reasonable doubt. *State v. Craft*, 2023 MT 129, ¶ 19, 413 Mont. 1, 532 P.3d 461.

¶11 Further, "[w]e have discretion to review an unpreserved claim for plain error and do so sparingly when a defendant's fundamental constitutional rights are implicated and the

5

error calls the fairness of the proceedings into question." *State v. Dineen*, 2020 MT 193, ¶ 8, 400 Mont. 461, 469 P.3d 122.

## DISCUSSION

¶12 *1. Whether there was sufficient evidence to convict Rodriguez of accountability for aggravated burglary.*

¶13 Rodriguez argues that his accountability for aggravated burglary conviction was not supported by sufficient evidence. Specifically, Rodriguez argues that Daniels assaulted Leah only *outside* the mobile home, not *inside*, and that this factual distinction undermines the predicate offense the State alleged to support the charge of aggravated burglary against Daniels, for which Rodriguez was found to be accountable. We must necessarily dissect the elements of these offenses.

¶14 The offense of aggravated burglary as stated in § 45-6-204(2), MCA (2017), includes several alternate subsections under which the crime may be charged. We are here concerned with the charge as it was brought by the State in this case, including the elements that a person commits the offense when he (1) "knowingly enters or remains unlawfully in an occupied structure" (-204(2), MCA); and (2) "knowingly or purposely commits any other offense within that structure" (-204(2)(a)(ii), MCA); and (3) "in effecting entry or in the course of committing the offense or in immediate flight after effecting entry or committing the offense . . . the person is armed with explosives or a weapon . . . ." (-204(2)(b)(i), MCA).

¶15 The predicate offense for this aggravated burglary charge, as required by 45-2-204(2)(a)(ii), MCA (". . . knowingly or purposely commits any other offense within that

6

structure"), was an alleged assault with a weapon by Daniels upon Leah inside the mobile home, in violation of § 45-5-213(1)(b), MCA (2017). Thus, as alleged against Rodriguez and tried, the jury was instructed that the State must prove beyond a reasonable doubt for Count IV, aggravated burglary by accountability:

> 1. That Mr. Daniels knowingly entered or remained unlawfully in an occupied structure; AND 2. That Mr. Daniels knowingly or purposely committed the offense of Assault with a Weapon *in the occupied structure*; AND 3. That in effecting entry Mr. Daniels was armed with a weapon; AND 4. That the Defendant, Esandro Roman Rodriguez, solicited, aided, abetted, agreed or attempted to aid, Mr. Daniels in the planning or commission of the offense, with the purpose of promoting or facilitating the commission of the offense.

Jury Instruction No. 25 (emphasis added).

¶16 Then, Rodrguez was also charged, as Count V, with the predicate offense itself, assault with a weapon upon Leah by accountability. Section 45-5-213(1)(b), MCA, likewise contains alternate subsections under which this offense can be committed, and this case was charged and the jury was instructed that the State must prove beyond a reasonable doubt as follows:

> 1. That Mr. Daniels *caused reasonable apprehension of serious bodily injury in Leah Lillian Gray*, by use of a weapon or what reasonably appeared to Leah Lillian Gray, to be a weapon; AND 2. That Mr. Daniels acted purposely or knowingly; AND 3. That the Defendant, Esandro Roman Rodriguez, solicited, aided, abetted, agreed or attempted to aid, Mr. Daniels in the planning or commission of the offense, with the purpose of promoting or facilitating the commission of the offense.

Jury Instruction No. 31 (emphasis added).

¶17 Rodriguez does not dispute that Daniels knowingly entered the mobile home, an occupied structure, that Daniels was armed with a weapon, and that he aided Daniels and

7

was therefore accountable for what Daniels did. Rather, Rodriguez challenges the requisite predicate offense for aggravated burglary—that the State provided insufficient evidence to prove that Daniels knowingly or purposely committed the alleged assault with a weapon upon Leah by causing reasonable apprehension of serious bodily injury while inside the home, or in the language of the charge, "in the occupied structure." Rodriguez argues that Daniels did not commit an assault because Leah, the purported victim, did not testify that, while she was inside the home, Daniels pointed his gun at her, threatened her, or that she experienced reasonable apprehension of serious injury. Rodriguez acknowledges that Daniels assaulted Leah with a weapon on the front porch, but contends the porch is not an "occupied structure" within the meaning of Montana's aggravated burglary statute. The State does not counter with an argument that the porch is an occupied structure, but argues that circumstantial evidence of the chaos that resulted from Daniels's intrusion inside the home with a gun established that a reasonable person in Leah's position would have experienced therein a reasonable apprehension of serious bodily injury.

¶18 The Dissent similarly contends that "the predicate offense relied on by the State at trial was assault with a weapon against Leah that occurred *outside the residence*," citing a brief comment made during the State's closing argument that assaults against Leah occurred both "on the porch and inside the house." Dissent, ¶ 34 (emphasis added). However, first, the charge of aggravated burglary itself, made here under § 45-6-204(2), MCA, required the defendant, in addition to knowingly entering or remaining unlawfully in an occupied structure, to "knowingly or purposely commit[] any other offense *within*

*that structure*." (emphasis added). Then, the jury was instructed consistently with that charge, i.e., that to convict Rodriguez under Count IV, aggravated burglary by accountability, it had to find that "Mr. Daniels knowingly or purposely committed the offense of Assault with a Weapon *in the occupied structure*," and that Rodriguez aided Daniels. Jury Instruction No. 25 (emphasis added). No contrary instruction was given. While at times the State's argument about its theory was admittedly broad and generalized, it did argue specifically that the charge was premised upon an assault upon Leah inside the house, explaining that the assault occurred after the porch incident, when Daniels "kicks in the door" and chases Leah "into the kitchen area," and that the home itself was the occupied structure:

> [Y]ou heard Leah exclaim, "There's a man here with a gun. He came in my house." You heard her testify, "I told him he couldn't come in the house. And I grabbed his arm and said, 'you can't go in there.'"
>
> You heard her testify he kicks in the door. *Well, last time I checked, if I tell somebody you can't come in my house and they kick in my door and they come in with a handgun which they just pointed at me, and they chase me into the kitchen area, which is just inside and around the corner, and I'm screaming, "Call 911; call 911," that's unauthorized entry into my home. My home is an occupied structure.* [(Emphasis added.)]

The jury returned a guilty verdict on that Count. Thus, as charged, instructed, and specifically argued, the predicate offense under Count IV was assault upon Leah inside the house. The Dissent also contends that there was insufficient evidence to support the predicate offense of assault upon Leah inside the house. This is a different issue, dependent upon review of the evidence in a light most favorable to the prosecution, to which we now turn.

9

¶19 Reasonable apprehension of bodily injury is assessed from "the perception of the victim," and not of the defendant's intent. *State v. Birthmark*, 2013 MT 86, ¶ 17, 369 Mont. 413, 300 P.3d 1140. Whether a victim has experienced a reasonable apprehension is determined by an objective standard, "asking whether a reasonable person under similar circumstances would have reasonably apprehended bodily injury." *State v. Finley*, 2011 MT 89, ¶ 29, 360 Mont. 173, 252 P.3d 199. Accordingly, "the direct proof of other facts may give rise to an inference that the victim sustained reasonable apprehension of bodily injury." *State v. Vukasin*, 2003 MT 230, ¶ 20, 317 Mont. 204, 75 P.3d 1284. Circumstantial evidence and inferences drawn from it are sufficient to support a conviction by a jury. *See Christensen*, ¶ 118 ("A jury may consider all direct and circumstantial evidence, as well as any legitimate inferences that may be legally drawn therefrom, to determine a defendant's culpability."). "Circumstantial evidence is adequate if . . . it is of such quality and quantity as to legally justify guilt beyond a reasonable doubt when all of the facts and circumstances are considered collectively." *State v. Laird*, 2019 MT 198, ¶ 60, 397 Mont. 29, 447 P.3d 416.

¶20 We conclude there was sufficient evidence to support the jury's finding that Daniels committed assault with a weapon of Leah inside of the home, specifically, that Leah there experienced reasonable apprehension of serious bodily injury. After Daniels put a gun into her stomach on the porch, Leah initially froze but then pushed Daniels, ran inside the home, and slammed the door. Daniels, after yelling, banging on the annex door and forcing open the main door, charged into the home while holding a gun in his left hand. Leah's

10

daughter-in-law, Celeste, testified that Daniels knocked down Leah's granddaughter with a gun. Leah testified that Daniels "was in—like coming into the living room door, like he was coming, like, towards me," and that Daniels "had a gun in his hand." Daniels proceeded into the kitchen, coming face-to-face with Junior, right in front of Leah. Leah's mother, Karen, was asleep in the back bedroom, the farthest point in the home away from the commotion, but testified she was awakened by Leah "screaming at me," and that, in response, she had "jumped out of bed." Karen testified that there were "loud voices" and that Leah screamed, "He's got a gun; he's got a gun; call 911." The 911 recording captured Leah also yelling, "Mom, get the cops here." For herself, Karen testified that she remembered "being very frightened." This evidence was sufficient for the jury to properly infer, without a statement from Leah about personally experiencing apprehension of injury, that a reasonable person in Leah's circumstances would have "reasonably apprehended" serious bodily injury or harm inside the home resulting from Daniels' actions there. *Finley*, ¶ 29. "[T]he direct proof of other facts may give rise to an inference that the victim sustained reasonable apprehension of bodily injury." *Vukasin*, ¶ 20.[1]

¶21 Rodriguez argues that the "objective" standard for inferring reasonable apprehension still must relate to the perception of the victim, and that the evidence here

---

[1] The Dissent contends that the Court relies on a "pandemonium theory" to affirm the conviction. Dissent, ¶ 39. The State's argument may include such a theory, but we affirm not because the Defendants may have caused pandemonium inside the house, but rather because a rational trier of fact could have found, from a review of all the evidence, including Leah's testimony, viewed in favor of the prosecution, that Daniels caused reasonable apprehension of serious bodily injury to Leah.

does not demonstrate that Leah subjectively experienced reasonable apprehension of serious bodily injury necessary to satisfy our decisions in *State v. Smith*, 2004 MT 191, 322 Mont. 206, 95 P.3d 137, and *City of Hamilton v. Mavros*, 284 Mont. 46, 943 P.2d 963 (1997).  However, neither of those cases require a different result here.

¶22     In *Smith*, this Court emphasized that reasonable apprehension must be experienced by "the intended victim of the serious bodily injury" and "not a third party who was merely fearful that the intended victim would be harmed." *Smith*, ¶ 29.  As discussed above, the record evidence here includes sufficient evidence to infer that Leah herself experienced a reasonable apprehension of bodily injury.  Merely because reasonable apprehension is assessed from the perspective of the victim—as opposed to the intent of the defendant— does not change the objective inquiry into a subjective one about the victim's reasonable apprehension.

¶23     Rodriguez argues *Mavros* requires reversal here.  There, the defendant drove his car recklessly through an intersection on a public road and pulled in front of his wife's car to prevent her from driving way.  *Mavros*, 284 Mont. at 48-49, 943 P.2d at 965.  The defendant hopped out of his car and moved toward his wife, yelling profanities.  *Mavros*, 284 Mont. at 48-49, 943 P.2d at 965.  The wife testified that she was startled but not afraid for her safety, in part because she had trashed the defendant's home two days earlier and was expecting there would be a resulting confrontation.  *Mavros*, 284 Mont. at 52-53, 943 P.2d at 967.  This Court held that there was insufficient evidence to support the assault but, critically, the wife there testified affirmatively she was not afraid during the defendant's

12

outburst. *Mavros*, 284 Mont. at 53, 943 P.2d at 967. In the case here, there was no evidence conveying affirmatively that Leah had not experienced apprehension.

¶24 Viewing the evidence in a light most favorable to the prosecution, we hold that the State's circumstantial evidence was sufficient to support an assault with a weapon by Daniels upon Leah inside the home by causing reasonable apprehension of serious bodily injury, thus supporting Rodriguez's conviction for aggravated burglary by accountability.

¶25 *2. Whether Rodriguez's convictions for assault with a weapon by accountability and aggravated burglary by accountability violate § 46-11-410, MCA?*

¶26 Alternatively, Rodriguez argues it was plain error for the District Court to permit entry of a judgment for convictions of both aggravated burglary by accountability and of the predicate offense of assault with a weapon by accountability. Rodriguez's argument is premised upon application of § 46-11-410, MCA, the "multiple conviction" statute. *See State v. Ellison*, 2018 MT 252, ¶ 26, 393 Mont. 90, 428 P.3d 826.

¶27 Section 46-11-410, MCA, provides that, when the same transaction may establish the commission of more than one offense, the defendant may be "prosecuted for each offense," but "may not [] be *convicted of* more than one offense if . . . one offense is included in the other." Section 46-11-410(2)(a), MCA (emphasis added). A lesser-included offense is one that "is established by proof of the same or less than all the facts required to establish the commission of the offense charged." Section 46-1-202(9)(a), MCA. Rodriguez argues that, because in this case assault with a weapon was a lesser-included offense of aggravated burglary, he could not lawfully be convicted of both accountability to aggravated burglary and accountability to assault with a weapon.

13

¶28 An "offense" for purposes of the multiple conviction statute may turn on how the case was charged and prosecuted by the State. In *State v. Russell*, 2008 MT 417, 347 Mont. 301, 198 P.3d 271, the defendant was charged under the "felony homicide" statute, which provided for several possible predicate felonies. *Russell*, ¶ 23. The State charged aggravated assault as the predicate offense, which was included in the instructions given to the jury. *Russell*, ¶¶ 23-24. Citing the multiple conviction statute, this Court explained:

> [W]hen the State uses an offense (such as kidnapping or robbery or, as here, assault) as a predicate offense in its charge of felony homicide, the accused cannot be found guilty of felony homicide without having committed the predicate offense of kidnapping, robbery, or assault. When the State chooses to charge the offenses in that fashion, the offenses merge. The predicate offense becomes a lesser included offense of the felony homicide charge. Sections 46-11-410, 46-1-202(9), MCA.

*Russell*, ¶ 26.

¶29 Our decision in *State v. Tellegen,* 2013 MT 337, 372 Mont. 454, 314 P.3d 902, is likewise instructive. There, the defendant was charged and convicted of burglary and theft. *Tellegen*, ¶ 25. The State could have prosecuted the action by demonstrating either that the defendant had the purpose to commit an offense or actually "commit[ed] any other offense" inside the structure. *Tellegen*, ¶ 24. The State chose to pursue a theory requiring proof that theft was actually committed, thereby making theft a predicate offense to the burglary charge, and the jury instructions from the district court aligned with this theory. *Tellegen*, ¶ 25. This Court concluded that convictions for both theft and burglary were improper under the statute, *Tellegen*, ¶ 26, despite the fact the State could have prosecuted

14

the action without violating the multiple conviction statute under an "intent theory" that would have required no proof of a predicate offense.

¶30 The State argues that reliance upon *Russell* and *Tellegen* is misplaced because, unlike those cases, where the predicate offenses merged with the greater offenses, there is an additional offense here: the assault with a weapon against Leah on the porch, which occurred separately from the assault against Leah in the home. Thus, the State contends that the assault on the porch "could not 'become' a lesser-included offense for aggravated burglary because the predicate offense for aggravated burglary . . . was complete and required Daniels to initiate the burglary by unlawfully entering the [home]."

¶31 The problem with this position is that the State did not charge or prosecute assault with a weapon upon Leah on the porch separately from the assault with a weapon in the home. The jury instructions, noted above, illustrate this point. Instruction No. 25, which covers the accountability for aggravated burglary charge against Rodriguez, denotes the predicate offense as "Assault with a Weapon" that occurred "in the occupied structure," consistent with § 45-6-204(2)(a)(ii), MCA, under which the aggravated burglary was charged. Notably, Instruction No. 31, accountability for assault with a weapon against Leah, did not distinguish between an assault occurring inside the home or on the porch—just "[t]hat Mr. Daniels caused reasonable apprehension of serious bodily injury in Leah Lillian Gray, by use of a weapon or what reasonably appeared to Leah Lillian Gray, to be a weapon . . . ." However, an assault occurring outside the home could not have served as a predicate offense for a charge of aggravated burglary under § 45-6-204(2)(a)(ii), MCA.

15

¶32 As in *Russell* and *Tellegen*, the State prosecuted the aggravated burglary charge in a manner that required proof that Daniels committed the assault inside the home. Only now does the State attempt to argue that the assault with weapon charge would include the assault that took place on the porch. However, because "we are bound by the "State's choice in framing the charges," *Tellegen*, ¶ 25 (quoting *Russell*, ¶ 27), the assault with a weapon charge merged, as a predicate offense, with aggravated burglary, and Rodriguez's conviction of both violates § 46-11-410, MCA. *See also State v. Stokes*, 2024 MT 32, ¶ 6, 415 Mont. 208, 543 P.3d 601 (holding that merger occurred when assault with a weapon was charged as a predicate offense to burglary, and thus became a lesser included offense, since "the State [chose] to charge the offenses in that fashion."). Accordingly, on the basis of plain error review, we reverse and dismiss Rodriguez's conviction under Count V, accountability for assault with a weapon against Leah. We leave undisturbed Rodriguez's remaining convictions, including, as challenged here, his conviction under Count IV, accountability for aggravated burglary.

¶33 Affirmed in part, reversed in part, and remanded for entry of an amended judgment consistent with this Opinion.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA

16

Justice Laurie McKinnon dissenting.

¶34    I dissent. I would conclude there was insufficient evidence to convict Rodriguez of aggravated burglary because the predicate offense relied on by the State at trial was assault with a weapon against Leah that occurred outside the residence. Based on the law of the case and the way the jury was instructed, the State's new theory on appeal that the predicate offense of assault with a weapon occurred by way of the pandemonium Rodriguez created in the house must be rejected under our precedent. First, the State's theory of the case and its proposed instruction was based on Rodriguez committing the predicate offense of assault with a weapon against Leah on the porch. Second, a front porch is not an occupied structure for purposes of the burglary statute. Third, the State did not identify a victim within the house who suffered reasonable apprehension of serious bodily injury by use of a weapon.

¶35    Aggravated burglary, as it pertains here, requires the State to prove (1) the person knowingly enters or remains unlawfully within an occupied structure, (2) the person has the purpose to or commits an offense in the occupied structure, and (3) the person is armed with a weapon. Section 45-6-204(2), MCA. Because Rodriguez was charged by accountability, the State also had to prove that he was legally accountable for Daniels's actions. The State limited its prosecution of the aggravated burglary offense to the predicate offense of assault with a weapon and charged Rodriguez with accountability for assault with a weapon of Leah Gray and William Dayrider. The State's theory for the aggravated burglary was that it occurred when Daniels pointed "that gun at Leah," which

17

the State characterized as occurring both "on the porch and in the building." However, there was no evidence that Daniels pointed the gun at Leah when she was inside the house; the only evidence was that he pointed the gun at her on the porch. The State explained to the jury that Rodriguez committed assault with a weapon by accountability when Daniels "threatened William Dayrider with that gun. He threatened Leah Gray with that gun." However, none of this occurred within the house. In fact, the State explained during closing that Daniels "committed the offense of assault with a weapon inside that structure. He pointed that gun at Leah on the porch and in the building."

¶36     In like fashion, the jury was instructed that to find Rodriguez guilty of aggravated burglary by accountability, the jury had to find that Daniels "committed the offense of Assault with a Weapon in the occupied structure." The State did not object to the instruction which defined aggravated burglary as requiring the actual commission of the offense within the occupied structure, rather than the mere purpose to commit the offense. "[W]here the State has the opportunity to object to a proposed jury instruction before it is given to the jury but fails to do so, that instruction, whether or not it includes an unnecessary element, becomes the law of the case once delivered, and the jury is accordingly bound by it." *State v. Azure*, 2008 MT 211, ¶ 23, 344 Mont. 188, 186 P.3d 1269. Thus, in cases where the doctrine applies, "the evidence must conform to the unchallenged jury instructions to support a conviction." *Azure*, ¶ 28. Here, that meant the

18

State had to prove that Daniels committed the offense of assault with a weapon inside Leah's home.[1]

¶37 The evidence established *only* that Daniels committed assault with a weapon when he pointed the gun at Leah *outside* of the house. The witnesses all testified that when Daniels pointed the gun at Leah it was on the porch. No witness testified that Daniels pointed the gun at anyone in the house. Rather, the testimony was clear that Daniels ran through the house in a matter of seconds looking for Dayrider. Pointing a gun at Leah on the porch is insufficient as a matter of law to establish the predicate offense for aggravated burglary, because the offense did not occur within an occupied structure.

¶38 A front porch is not an occupied structure. Section 45-6-204(2)(a)(ii), MCA, has as an element of burglary that "the person knowingly enters or remains unlawfully *in* an occupied structure" and "commits any other offense *within* that structure." Daniels was not within the house when he pointed the gun at Leah. In *State v. Fish*, 190 Mont. 461, 621 P.2d 1072 (1980), we reversed an attempted burglary conviction where Fish was present on the front porch and did not enter the residence. We held:

> The only evidence presented at trial indicates that Fish was on the front porch of Miller's trailer knocking or pounding on the door. Fish testified as he was knocking he told Miller to come out and get it over with. There was testimony of Sally McCurdy, who was inside the trailer at the time, that Fish told Miller to come out or he would come in; however, no evidence was ever

---

[1] The Court recognizes the problem created by the State's theory that the assault with a weapon occurring on the porch served as the predicate offense for aggravated burglary when it holds that "the State did not charge or prosecute assault with a weapon upon Leah on the porch separately from the assault with a weapon in the home" and thus rejects the State's contention that the assault with a weapon occurring on the porch was a separate offense. Opinion, ¶ 31.

> presented that Fish attempted to force open the door or that he ever grabbed or handled the door knob in an attempt to open the door.
>
> Based upon a review of all of the evidence, in a light most favorable to the State, we are clearly unable to find that Fish's conduct at any time constituted an overt act that could be construed as an attempt to enter Miller's trailer. Mere knocking or pounding on a door does not reach far enough towards the accomplishment of the alleged desired result to gain entry into an occupied structure necessary to establish the crime of attempted burglary.

190 Mont. at 469, 621 P.2d at 1077. An "occupied structure," under our precedent refers to a space which is either resided in or used to conduct business. Indeed, the State has not challenged Rodriguez's argument that Leah's porch was not an occupied structure. And the Court's conclusion that an assault with a weapon occurred because of the pandemonium within the house avoids the problem of the predicate offense having occurred outside the residence.

¶39 The "pandemonium theory" upon which the Court concludes Rodriguez's conviction should be affirmed was never argued by the State at trial. The State's argument was clear: the assault with a weapon of Leah occurred on the porch and in the house. However, Leah never testified that Daniels pointed the gun at her inside her home. The Court adopts the State's argument, made for the first time on appeal, that circumstantial evidence Daniels ran through the residence with a gun was sufficient to establish the predicate offense of assault with a weapon upon a hypothetical person even though the State's trial theory was that the assault occurred on the porch. We do not consider, let alone base our decision upon, arguments not presented in the trial court. In particular, here, the argument is being used to affirm a conviction and the defendant did not have an

20

opportunity to address the State's theory at trial. We explained in *State v. Smith*, 2004 MT 191, 322 Mont. 206, 95 P.3d 137,

> Although we note that 45-2-101(3), MCA, defines "another" as "a person or persons other than the offender," and that the District Court concluded that "another" meant "someone other than the defendant," a fair reading of the phrase "in another" within the context of the entire statute, and particularly within the phrase "reasonable apprehension of serious bodily injury in another," means *the intended victim of the serious bodily injury*, not a third party who was merely fearful that the intended victim would be harmed. We conclude that subpart (1)(b) does not expand the crime of assault with a weapon to an entire new group of third parties who were fearful about the defendant inflicting serious bodily injury upon an intended victim. . . .
>
> Therefore, to convict Smith of the offense of assault with a weapon, the Information needed to allege that Smith purposely or knowingly caused reasonable apprehension of serious bodily injury *in Hernandez, the intended victim of serious bodily injury*, by use of a weapon, or what reasonably appeared to be a weapon; or, by causing reasonable apprehension *in Hernandez, the intended victim of serious bodily injury,* that Hernandez would be injured by a weapon. Thus, although the charge alleged in Count II of the second amended Information was proper under the statute, that charge was dropped pursuant to the plea agreement. Only Count I of the second amended Information was retained, which alleged reasonable apprehension *in Tami*, who was *not* the intended victim of serious bodily injury, but a *third party victim* who was fearful of the harm to the intended victim, Hernandez. Thus, Count I retained by the plea agreement failed to state the necessary elements for the offense of assault with a weapon as required under 45-5-213, MCA.

*Smith*, ¶¶ 29-30 (emphasis in original).

¶40 The evidence does not support that Daniels pointed the gun at Leah inside her home. The offense of assault with a weapon against Leah occurred outside and ended by the time Daniels entered the home. There was no evidence that once Daniels entered the home he pointed the gun again at Leah (or anyone) thereby committing an assault with a weapon within the home against Leah. The intended victim, Leah, never testified as such and the

State's theory did not allow for other third parties to establish the element of the State's offense where Leah was charged as the intended victim.

¶41 Had the State's theory—which is espoused for the first time on appeal and now adopted by this Court—been raised at trial, Rodriguez could have defended against it. However, the State chose its theory of prosecution, Rodriguez defended against it, and the jury was instructed accordingly. Here, the facts do not support that the predicate offense occurred in an occupied structure. I would, accordingly, dismiss the aggravated burglary conviction for insufficiency of the evidence.

/S/ LAURIE McKINNON

Justices Ingrid Gustafson and Dirk Sandefur join in the dissenting Opinion of Justice Laurie McKinnon.

/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR